HOME MUTUAL BENEFIT ASSOCIATION *v.* MAYFIELD.

Opinion delivered February 16, 1920.

1. INSURANCE — CONSTRUCTION OF POLICIES.—Policies of insurance should be interpreted by the rules governing other written contracts where the meaning of the language used is clear and explicit; but where there is doubt as to the meaning of the language used, they should be construed strictly against the insurer and favorably to the insured.

2. INSURANCE—LOSS OF EYE—CONSTRUCTION OF POLICY.—Where a policy provided that, in case of accident or disease resulting thereafter by or because of which insured should suffer the loss of one or both eyes, insured might mature the full value of the policy or certificate, the policy insured against the loss of an eye from disease, whether the disease existed at the time of the policy or began afterwards.

3. INSURANCE—MISREPRESENTATION IN APPLICATION.—Where an applicant for insurance against the loss of his eyes from disease commits a fraud in misrepresenting the condition of his eyes, such fraud will avoid the insurance.

Appeal from Crawford Circuit Court; *James Cochran,* Judge; affirmed.

STATEMENT OF FACTS.

T. B. Mayfield sued the Home Mutual Benefit Association upon two certificates of insurance.

The material facts are as follows: The Home Mutual Benefit Association is located at Fayetteville, Arkansas, and is engaged in the business of writing life and accident insurance on the mutual or co-operative plan. On the 22d day of November, 1915, the defendant issued to the plaintiff a life and accident certificate by which the association was bound at the death of the plaintiff, or upon his suffering the total loss of one or both eyes by disease, to pay him a certain stipulated sum. A like policy was issued to the plaintiff by the defendant on the 28th day of December, 1915. By the terms of the certificate it was provided that the application should be considered as part of the contract. In the application certain questions were asked and answered as follows:

"Have you a certificate in this association? No.

\*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*

"Are you crippled? No. If so wherein and to what extent ................. Are both of your eyes good and healthy? Yes."

The application then states that these statements are made to enable the applicant to obtain a membership certificate in the Home Mutual Benefit Association of Fayetteville, Arkansas. The benefit certificate also contains the following:

"It is especially provided that, in case of accident or disease resulting hereafter by or because of which the applicant shall suffer the loss of one or both hands, or the total loss of at least four fingers on either hand, at or above the knuckle joint, or the loss of one or both feet, at or above the ankle, or total loss of one or both eyes, or shall suffer a paralytic stroke resulting in the loss of the use of one or more limbs, he or she may have the privilege of maturing the full value of this certificate at the time of the determination of the result of such accident or disease or at any future time during the life of the applicant, all subsequent assessments having been paid, the actual value of the certificate to be paid to the applicant on the execution of cancellation receipt thereof."

T. B. Mayfield, the plaintiff, was a witness in his own behalf and testified that he had lived at Alma, Arkansas, for the past twenty years; that he made application for the two benefit certificates sued on in November and December, 1915; that since the taking out of the two policies he had lost the sight of his left eye entirely and claims the benefits of the insurance on that ground.

On cross-examination he stated that he had lived at Alma for the past twenty years and was past 57 years of age. The trial was had on the 14th day of July, 1919, and the witness stated that he lost the sight of his eye about eight or nine months ago. He was asked when his eye first became affected and answered, "I do not know, I never had as good eyes as some people." He further stated on cross-examination that he could not see out of

his eyes good for twenty years and that he could never see in his life as good as lots of people.

Several witnesses on behalf of the defendant testified that they had known the plaintiff at Alma, Arkansas, for between fifteen and twenty years and that the condition of his eyes had been bad during all that time; that at night his eyes were so bad that he had to be led around town, and that he could not see to go about at night.

One witness testified that Mayfield had been forced to quit business, which was that of a merchant, on account of his eyes. Another testified that Mayfield had to be led around town in the daytime for the past fifteen years.

T. B. Mayfield was recalled and testified that both his eyes were about the same until about a year ago; that at that time sharp pains would shoot through the eye that went out and that just afterwards he lost the sight of his eye. He denied that he had been led around in the daytime on account of defective eyesight. He said that he was only led around at night, and that there was no change in his eyesight until about a year ago. On cross-examination Mayfield stated that he never did have good eyes, and that at the time he signed the application for insurance it was a little dark in the room, and that he told the agent he could not see to write his name.

Two other witnesses were introduced by the plaintiff who testified that they were present when he signed the application for insurance and heard him tell the agent that his eyes were weak. One of them said that the agent asked him if he was blind and that Mayfield replied, no; but that he could not see as well as some men could. Mayfield told the agent that his eyes were not good and asked the agent to sign his name to the application on that account.

The jury returned a verdict for the plaintiff, and from the judgment rendered the defendant has appealed.

*Allen G. Flowers,* for appellant.

The verdict is not sustained by the evidence but is contrary to both the law and the evidence. The applica-

tion provides that in case of accident or disease *resulting hereafter,* etc.  The application and certificate constitute one inseparable contract which is unambiguous and binding on appellant and appellee.  It plainly provides that appellant would not become liable unless the loss of the eye was occasioned by disease or accident *resulting after* the signing of the application and the issuance of the certificate.  This being true, it was error to submit the question to the jury.

*J. E. London,* for appellee.

This case falls squarely within the rule in 129 Ark. 450.  Appellee informed the agent correctly and truly as to the condition of his eyes, and there was no fraud practiced; he told the truth and he was accepted under the policy.  The knowledge of the soliciting agent was the knowledge of the company.  129 Ark. 450; Cent. Digest, §§ 968, 975, 997; 1 Bacon, Life & Acc. Ins., § 274, There are no errors in the instructions.  The jury were properly instructed.  129 Ark. 450; 79 *Id.* 315; 52 *Id.* 11-14; 11 S. W. 1016; 65 Ark. 54; 71 *Id.* 295; 81 *Id.* 508; 102 *Id.* 146.

HART, J. (after stating the facts).  It is earnestly insisted by counsel for the defendant that the evidence is not sufficient to warrant the verdict.

According to the testimony of the plaintiff, Mayfield, he took out the policies sued on in November and December, 1915, and since that time has kept the premiums paid.  He admitted that his eyesight had been weak for fifteen or twenty years, but stated that he told this fact to the agent when he made his application for insurance.  The trial was had in July, 1919, and Mayfield said that his eyes continued to be about the same until about a year ago, at which time sharp pains began to shoot through his left eye and that he soon afterwards lost the sight of it.

It is contended by counsel for the defendant that this testimony is not sufficient to support the verdict for the reason that the policy did not insure the plaintiff against

any disease of the eye which existed at any time prior to the date of the application, but only from such diseases as might occur after the execution of the policy. Counsel insists that under the testimony the jury could not tell whether or not the disease which caused the loss of plaintiff's left eye existed at the date the policy was written or whether it occurred after the policy was executed.

We do not agree to the construction placed upon the policy by counsel for the defendant. So much of the clause in question as is applicable to the present case may be stated as follows: ''It is specially provided that in case of disease resulting hereafter by or because of which the applicant shall suffer the total loss of one or both eyes,'' etc. It is true that it is well settled in this State that policies of insurance should be interpreted by the rules governing other written contracts where the meaning of the language used is clear and explicit. It is equally well settled that in cases where there is doubt as to the meaning of the language used the policy should be construed strictly against the insurer and favorably to the insured. The reason is that policies of insurance are made on printed forms carefully prepared by experts employed by the insurer. The insured has no option as to the form of the contract and no voice in its preparation. The object of the contract is to afford indemnity against loss, and the policy should be so construed as to effectuate this purpose rather than in a way which would defeat it. One of the dictionary meanings of the word ''result'' is to terminate, or to end. When given this meaning, the clause would read: It is expressly provided that in case of disease terminating or ending hereafter by or because of which the applicant shall suffer the total loss of one or both eyes, etc. In other words, the policy was intended to insure the applicant against the loss of his eyes from disease, regardless of the fact of whether the disease existed at the date of the policy or first began afterwards. The intention was that the loss of the eye, or the result from the disease should happen after the policy was executed. This is borne out by

the application. By the terms of the policy the application was expressly made a part of the contract of insurance. The applicant was asked if he had a certain specified disease, and was then asked if both of his eyes were good and healthy. He answered, yes. Then follows a clause that these statements are true and correct, and that they are made to enable the applicant to obtain a membership certificate in the defendant association. The object of the question was to ascertain if the applicant's eyes were in such a healthy condition as to warrant the association in insuring him against the loss of them from disease. Of course the loss of the eye must result after the execution of the policy. The company would be equally liable whether the disease originated before or after the execution of the policy, provided the loss of the eye was the result of the disease and happened after the execution of the policy, and there was no fraud perpetrated by the applicant in obtaining the insurance. The association was interested in knowing the condition of the applicant's eyes in order to determine whether he was a fit subject for insurance against the loss of his eyes. If the applicant perpetrated a fraud in this respect, it would avoid the insurance.

In *Mutual Aid Union* v. *Blacknall,* 129 Ark. 450, the court held that a life insurance company will be bound under a policy of life insurance, where the applicant and insured made false statements concerning his physical condition, where the agent soliciting the insurance was also charged with the duty of writing the data concerning the applicant's physical condition, and where the agent, in course of the examination, learned the applicant's true condition. The court further held that if an agent, in collusion with the applicant, even though acting within the apparent scope of his authority, perpetrates a fraud upon the insurance company by making false and fraudulent representations upon which the insurance is obtained, such fraud will vitiate the policy. See also *Walker* v. *Illinois Bankers' Life Ass'n,* 140 Ark. 192.

The court instructed the jury on the question of fraud in procuring the policy in accordance with the principles of law just announced. The finding of the jury on this question was in favor of the applicant, and it can not be said that there is no evidence to support it. The insured testified that he made a full and fair disclosure of the condition of his eyes to the agent, and his testimony was corroborated by other witnesses who were present when the application for insurance was made.

Counsel for the defendant also assigns as error the action of the court in refusing to give an instruction asked by the defendant. We need not set out this instruction, for the object of it was to tell the jury that if it should find that the disease which resulted in the loss of plaintiff's eye was in existence at the time the policy was executed, the company would not be liable. We have already discussed the meaning of that clause of the policy upon which the instruction in question was predicated, and for the reason there given we think that the policy was not susceptible of the meaning placed upon it by the association and that the court did not err in refusing the instruction.

It follows that the judgment must be affirmed.