TRAVELERS' PROTECTIVE ASSOCIATION OF AMERICA *v.* STEPHENS.

Opinion delivered April 25, 1932.

664

*Jones & Jones,* for appellant.

*Will Steel* and *Frank S. Quinn,* for appellee.

HART, C. J., (after stating the facts). It is earnestly insisted by counsel for the defendant that the court should have directed a verdict in its favor. We do not agree with counsel in this contention. Under the evidence adduced by the plaintiff, the injury was brought about without the agency of the insured, and it was accidental, although the injury might have been intentionally inflicted by the negro. According to the testimony of the plaintiff, which was corroborated by his companion, he was accidentally cut while trying to separate the negro and his companion. He did not see any knife or other weapon in the hands of the negro. There was apparently no danger in trying to separate them. The negro was a small man, and the conduct of the plaintiff in trying to separate them was the natural result of any one with human impulses. Hence the injury was accidental, within the meaning of the policy. We have set out its terms in our statement of facts, and we need not repeat them here. *Maloney* v. *Maryland Casualty Co.,* 113 Ark. 174, 167 S. W. 845; *Ætna Life Ins. Co.* v. *Little,* 146 Ark. 70, 225 S. W. 298; *Mutual Benefit Life & Accident Association* v. *Tilley,* 176 Ark. 525, 3 S. W. ('2d) 320; *Pacific Mutual Life Ins. Co.* v. *Ware,* 182 Ark. 868, 33 S. W. (2d) 46.

It is next contended that the court erred in giving, at the request of the plaintiff, instruction No. 1. It reads as follows: "You are instructed that the terms 'accident' and 'accidental means,' as used in the policy sued upon and in the constitution and bylaws of the defendant association, are used in their ordinary popular sense, as meaning happening by chance; unexpectedly taking place; not according to the usual course of things, or not

as expected. If you find from a preponderance of the evidence that the injury received by the plaintiff happened by chance, or unexpectedly took place, or was not according to the usual course of things, or was not as expected, then you will find that said injury was the result of accident and comes within the terms of the insurance contract, unless you find from a preponderance of the evidence that it falls within one or any of the exceptions in the contract.'' It is contended on the part of the defendant that there is a technical difference between the term ''accident'' and the term ''accidental means,'' as used in the policy sued on and in the constitution and bylaws of the association.

Where the provisions of a policy of indemnity are reasonably susceptible of two constructions consistent with the object and purpose of the contract, one favorable to the insurer and the other to the insured, that will be adopted which is favorable to the insured. It has been the settled policy of this court since the beginning of its construction of contracts of insurance to hold that the policy should be liberally construed so as not to defeat, without necessity, the claim for indemnity. The reason is that such policies are written on printed forms prepared by experts employed by the insurance companies for that purpose, and the insured has no voice in the matter. Hence it is fair and reasonable that, where there is ambiguity, or where the policy contains language susceptible of two constructions, that which will sustain the claim and cover the loss should be adopted. *Providence Life Assurance Society* v. *Reutlinger,* 58 Ark. 528, 25 S. W. 835; *American Bonding Co.* v. *Morrow,* 80 Ark. 49, 96 S. W. 613, 17 Am. St. Rep. 72; *Fidelity & Casualty Co.* v. *Meyer,* 106 Ark. 91, 152 S. W. 995, 44 L. R. A. (N. S.) 493; *Home Mutual Benefit Association* v. *Mayfield,* 142 Ark. 240, 218 S. W. 371; *Great American Casualty Co.* v. *Williams,* 177 Ark. 87, 7 S. W. (2d) 775; *National Equity Life Ins. Co.* v. *Bourland,* 179 Ark. 398, 16 S. W. (2d) 6; *Fowler* v. *Unionaid Life Ins. Co.,* 180 Ark. 140, 20 S. W. (2d) 611; *Southern Surety Co.* v. *Penzel,* 164 Ark. 365, 261 S. W. 920.

In this connection, it may be stated that the whole policy and the constitution and bylaws of the association must be construed together, and every part read in the light of the other provisions. The constitution and bylaws are expressly made a part of the policy. It would be unreasonable for the court to give a construction to the contract which it is manifest was not contemplated by the parties when the policy was issued and which would defeat the evident object of the contract of insurance. If the association had wished that the terms "accident" and "accidental means" should have had different meanings, the contract of insurance should have given the insured warning of that fact. The court correctly instructed the jury in accordance with the principles of law above announced. If the association used the terms "accident" and "accidental means" as synonymous, it cannot now complain that the court gave them the same construction.

It is also contended that the court erred in submitting to the jury the question of total disability. The first ground for the contention is that two claims were presented to the association. The first one was presented on January 19, 1931, which was a few days after the injury was received. In that claim partial disability only was asked for by the plaintiff. The second claim was filed on February 14, 1931, and was for total disability. There is no inconsistency in this respect. As we have already seen, insurance policies are framed by the insurance companies with great care with the view of limiting their liability as much as possible, and usually impose conditions on the insured to be performed in a particular manner. These provisions are strictly construed against the insurer. Here the plaintiff gave notice within the time required by the policy. According to his testimony, when he made the claim for partial disability, he did not know that he was wholly disabled. He did not make any claim for total disability until he had ascertained and believed that he was wholly disabled. It would be at variance to the principles of law and justice

to hold that his honest act in attempting to comply with the terms of the policy by giving notice as required by it should deprive him of what he was honestly and reasonably entitled to under the terms of the policy. *American Life & Accident Association* v. *Walton,* 133 Ark. 348, 202 S. W. 20.

The second ground of their contention is that there is no evidence upon which to base a submission of the question of total disability to the jury. Our decisions support the view that provisions in accident policies for indemnity in the event the insured is totally or wholly disabled do not require that the accident shall render the insured absolutely helpless, but such provisions are construed as meaning such a disability as renders him unable to perform the substantial and material acts of his business or occupation in the usual and customary way. *Industrial Mutual Indemnity Co.* v. *Hawkins,* 94 Ark. 417, 127 S. W. 457, 29 L. R. A. (N. S.) 635, 21 Ann. Cas. 1029; *Ætna Life Ins. Co.* v. *Phifer,* 160 Ark. 98, 254 S. W. 335; *Ætna Life Ins. Co.* v. *Spencer,* 182 Ark. 496, 32 S. W. (2d) 310; *Missouri State Life Ins. Co.* v. *Snow, ante* p. 335; *Mutual Benefit Health & Accident Association* v. *Bird, ante* p. 445. As pointed out in the Spencer case, our rule on this subject is in accord with the general trend of authority. It is claimed by counsel for the defendant that other decisions of our court are somewhat at variance with the rule announced in the cases cited. We do not think so, but no useful purpose could be served by pointing out in detail the differences in the cases. Isolated sentences of a particular case may always be used in apparent contradiction of expressions announced in other cases by the same court where the facts are different. Each case must be construed with reference to the particular facts, and all the cases on a given subject must be read in the light of each other. When this is done, it does not appear to us that we have ever varied from the rule announced in the cases above cited. If any mistake was made, it was in the application of the rule itself to the facts of the particular case.

There are certain exceptions to the risk as appears from the constitution of the association. They may be summarized as follows:

"1. Received while under the influence of intoxicating liquor or narcotics;

"2. From fighting or wrestling;

"3. From a hazardous adventure or an altercation;

"4. From intentional injury;

"5. While fighting, resisting arrest, or violating the law."

It is not claimed by the defendant that the plaintiff was under the influence of intoxicating liquor or narcotics as provided in subdivision 1. The contention of the defendant as to the other four subdivisions with regard to whether the injury was received while the plaintiff was fighting or engaged in a hazardous adventure, or from an intentional injury, was submitted to the jury under, instructions prepared by the defendant in its own behalf. The jury found that issue in favor of the plaintiff, and no useful purpose could be served by setting out and reviewing the instructions in detail.

It is strongly insisted by the defendant that the court erred in allowing the plaintiff to recover for total disability for 104 consecutive weeks, as provided in the policy, when the trial of the case took place a shorter period of time. Defendant's contention now is that it was entitled to a reduction of the amount recovered to the value at the time the trial was had. We do not agree with defendant in this contention. The defendant denied that it was liable to the plaintiff in any amount under the terms of the policy. It did not offer to pay him the weekly indemnity for total disability as long as such disability should continue. It sought to defeat his claim altogether. The jury only allowed the plaintiff to recover for the period of time provided for in the policy. In railroad damage cases recovery for permanent disability is allowed for a period of time according to the life expectancy of the plaintiff shown by mortality tables prepared by insurance companies. In the case at bar

defendant was only required to pay for the time it agreed to do so in its contract of insurance.

Finally, it is insisted that there is no testimony upon which to base the question of total disability because the physician only gave it as his opinion that the plaintiff was wholly disabled. The plaintiff was engaged in the business of buying and selling secondhand automobiles. In the course of his avocation he was required to repair and put in condition the secondhand cars. before he would sell them. He had a small business and performed most of the labor himself. According to a reputable physician, he examined plaintiff in June after the injury and found adhesions. The knife cut caused a serious wound. The plaintiff had a hemorrhage in the pleural cavity between the lungs and the wall. Adhesions caused him to breathe heavily and suffer great pain when he performed manual labor. That condition would prevail until removed by surgical operation, and the physician considered it permanent. By adhesions witness means the pleural sac growing together, which would lessen the ability of the plaintiff to do manual labor. Under these circumstances, the jury had a right to consider the opinion of the physician and to find that the plaintiff was not capable of pursuing his usual avocation within the meaning of the rule announced above.

Other assignments of error are urged for the reversal of the judgment, but we believe that they are fully covered by the principles of law above announced and do not merit a separate discussion.

We find no reversible error in the record, and the judgment will therefore be affirmed.