Mutual Life Insurance Company *v.* Marsh.

4-2804

Opinion delivered January 23, 1933.

*Frederick L. Allen, Rose, Hemingway, Cantrell & Loughborough,* for appellant.

*Martin & Martin,* for appellee.

Butler, J. Action by appellee for total disability under the provisions of a policy issued by appellant. Judgment in the court below, from which is this appeal.

1.  The appellant, Mutual Life Insurance Company, is a foreign corporation with its domicile in the State of New York, and the appellee is a citizen of this State. The amount sued for was $3,000 and attorney's fee. It is the contention of the appellant that the prayer for attorney's fee made the amount sued for more than $3,000, exclusive of interest and costs, within the meaning of the Federal statute, and on that theory, in apt time, filed its petition for removal of the cause to the United States District Court in the proper district. The court overruled that motion, and this action of the court is the first assignment of error urged upon our attention.

Counsel for appellant has cited a number of cases which support their view, but this court has recently had the identical question before it in the case of *Missouri State Life Ins. Co.* v. *Johnson, ante* p. 519, and ruled against the contention here made. On the authority of that case, we hold that the assignment urged is not well taken.

2.  That portion of the policy involving the question of disability and the rights and duties of the parties in respect thereto is that, upon due proof to the company by insured "that he has become totally and permanently disabled by bodily injury or disease so that he is, and will be, permanently, continuously and wholly prevented thereby from performing any work for compensation, gain or profit, and from following any gainful occupation," during the continuance of the disability, and, after proof made, the payment of premiums accruing thereafter will be waived by the insurer, and it will pay to the insured a monthly income of $10 for each $1,000 of the face value of the policy, the first premium being due on receipt of said proof, and subsequent payment on the first day of each calendar month thereafter; that, after proof had been made and accepted, the insured nevertheless was required, no oftener than once a year, on demand of the insurer, to furnish proof of the continuance of the disability, and the right was reserved, if it should appear to the insurer that the insured had become and was able

"to perform any work or follow any occupation whatever for gain or profit, no further premium shall be waived, and no further income shall be paid."

The policy was for $2,000, issued on January 18, 1922; the premiums were regularly paid on or before their due date, and it was in full force and effect on July 28, 1926, the date of appellee's injuries. Thereafter, appellee made claim and furnished due proof of total and permanent disability occasioned by his injuries; the claim was allowed, and the insurer made the disability benefit payments of $20 per month to the insured regularly until and for the month of December, 1930. Ascertaining that the insured had been elected to the office of circuit clerk of Nevada County and was inducted into office on January 1, 1931, the insurer declined to make any further payments, on the ground that the insured was no longer permanently disabled within the meaning of the policy, but was able to work and engage in a gainful occupation.

At the time of the injuries received by the appellee, he was a traveling salesman for a drug company. As a result of his injuries, his right arm is totally paralyzed, his right leg, because of fractures it sustained, has become shorter, and its function impaired so that he uses it with pain and difficulty, and it is not more than 25 per cent. efficient. At the time of the trial of this cause and before, at intervals of about sixty days, a sinus develops in the upper part of the leg, causing appellee to run a high temperature and requiring his confinement in bed for a period of about two weeks. It was necessary at these times that the sinus be opened to allow drainage. After the sinus was thoroughly drained, he begins to feel better, and can get around for a while until the sinus develops again. On the right heel there is a constant sinus which causes appellee discomfort. He is unable to walk without the use of a cane, and is obliged to wear a shoe specially constructed to fit the right foot because of the shrinkage of the bone from the fracture.

It is conceded that appellee's physical condition is permanent, and such as is calculated to lessen his power of resistance and to destroy his vitality. His mental powers have not been affected by his injury, and his mind is as it was before the date of the accident. In the summer preceding the election he was able to, and did, conduct an active compaign for office; he went around the country in a car, having some one to drive for him, making the rounds with the other candidates and making frequent speeches to the voters, and was not seriously ill during the campaign. The appellee is not able to do any physical work in connection with his office, which requires a considerable amount of physical labor. The office is conducted by means of deputies. It is on a fee basis, and from the fees received the appellee pays for the deputies needed. He is able to sign his name with his left hand, and spends the time sitting around the office, giving it his general supervision. It appears that, with the exception of signing his name, the appellee is unable to do anything of a substantial nature in his office; and, while he is able to go to the office daily and usually to remain during office hours, some two or three times a week he is obliged to leave and go home about two o'clock because his injured leg requires rest. Although he conducts the office by deputies, he has received, in addition to the salaries paid to them, a substantial sum from the time he went into office until the date of the last trial in the court below.

From these facts, which are undisputed, it is strongly insisted that a case arises where the injuries, though great, and the disabilities, though serious, do not bring them within the nature of such as were contemplated when the policy was issued, and counsel do not believe a single case can be found where a recovery under such conditions has been sanctioned. It must be conceded that this is a unique case, and it is to be doubted whether one similar in all its circumstances has been before the courts. We do not agree, however, with the theory held by the appellant, for, if we adopt it, no case of total disability can arise

except where not only the body is disabled, but the mind wrecked as well. No matter how seriously the body may be affected, there are those who, because of some peculiar ability or because of some happy chance, are still able, despite their handicap, to escape from beggary and to earn a living. Cases are not infrequent where men have been stricken totally blind and yet have earned substantial incomes; some, with their bodies totally disabled, have been able to conduct a successful business from the bed in which they are continuously confined; others, because of fortuitous circumstances, have been placed in a position where they were removed above want. These cases all arise, however, because of the possession of some extraordinary capacity or of some fortunate circumstance. Certainly, no cases of this character were in the minds of the insured or the insurer when the contract was entered into, but only the ordinary and usual events that would affect the ordinary person.

In construing contracts such as the one now before us, it has always been insisted by the insurer that a strict and literal interpretation is required, and a few courts have adopted this view. The great majority, however, decline to do so, on the theory that a fair intention of the parties is that the insured should receive indemnity when he is so injured as would prevent him from carrying on any business which, without the injury, he is able to do or capable of engaging in. In the case of *Industrial Mutual Indemnity Co.* v. *Hawkins,* 94 Ark. 417, 127 S. W. 457, the following rule was announced: "In the construction of all contracts, the true object is to arrive at the intention of the parties; and, in order to do that, it is necessary to take into consideration the purpose of the parties in making the agreement. In construing such a provision as is involved in this policy, that meaning should be given to the language which will be consistent with the fair import of the words used, having reference to the object and purpose of the parties in making the contract. The contract sued on is like any other insurance policy, and its provisions should therefore be con-

strued most strongly against the insurer. As the language employed is that of the defendant, a construction will not be adopted which will defeat a recovery if it is susceptible of a meaning that will permit one."

In the instant case, it is undisputed that practically none of the essential duties of the office of circuit clerk is performed by the appellee. He merely sits around as long as his injuries will permit, signing his name and filing a few papers.

"This court has held that provisions in insurance policies for indemnity in case the insured is totally disabled from prosecuting his business do not require that he shall be absolutely helpless, but such a disability is meant which renders him unable to perform all the substantial and material acts of his business, or the execution of them in the usual and customary way. * * * The object to be accomplished was to indemnify the insured for loss of time for being wholly disabled from prosecuting his business. It has been well said that, if the language used was to be construed literally, the insurer would be liable in no case unless the insured should lose his life or his mind. Of course, as long as he is in possession of his mental faculties, he is capable of transacting some part of his business; but, as we have already seen, he was not able to prosecute his business within the meaning of the policy unless he was able to do all the substantial acts necessary to be done in its prosecution. The very purpose of obtaining the policy was to indemnify him in case he should become disabled, so that he could not carry on his business." *Ætna Life Ins. Co.* v. *Spencer,* 182 Ark. 496, 32 S. W. (2d) 310, (quoting from pages 500-1). In that case Spencer, the insured, was engaged in the truck and produce business, and prior thereto had taught school and farmed. For several years he had suffered with sacro-iliac arthritis and sciatic neuritis, which had disabled him to some extent, but finally he became so disabled that he could do but little work. He could walk around, but was unable to do anything in his place of business except sit around a part of the day answering the telephone and

advising with his sons as to the conduct of the business. The contract of insurance in that case was practically the same as in the case at bar, and it was there held, under the rule stated, Spencer was entitled to recover. The rule announced was recognized in *Missouri State Life Ins. Co.* v. *Snow,* 185 Ark. 335, 47 S. W. (2d) 600, and in *Travelers' Protective Ass'n* v. *Stephens, Id.,* 660, 49 S. W. (2d) 364.

If the appellee had been circuit clerk at the time he was disabled, the fact that he could go to his office and sit around and sign his name would certainly not have precluded him from obtaining the benefits for which he had contracted and paid. We can see no difference in his having obtained this office after the disability than in the state of case supposed, and we do not think that an office such as that of circuit clerk was in the mind of the parties at the time of the contract, or, under the facts in this case, that it comes within the term, "gainful occupation." It has no degree of permanence, and in this particular case appears to be, so far as the appellee is concerned, a sinecure bestowed upon him perhaps because of his infirmities by an indulgent people. In any view of the case, since the appellee is not able to perform all of the substantial duties of the office in the usual and customary way, he is totally disabled within the rule announced in the case of *Ætna Life Ins. Co.* v. *Spencer, supra,* and, as the facts are not in dispute, the court properly directed a verdict for the plaintiff.

3. The court instructed the jury on the question of damages to the effect that, if they found that the appellee was totally and permanently disabled within the meaning of the policy, they might return a verdict for a sum equal to the present value of the monthly benefits payable monthly during the period of appellee's life expectancy. The appellant contends that this was error, and in this contention we agree. The general rule permitting recovery on the theory of anticipatory breach is stated in Richards on the Law of Insurance, 4th ed., p. 580, § 342, as follows: "By the weight of authority, if the insurer renounces the continuing contract of insurance, upon his

part, and unequivocally refuses in advance of its maturity to perform it, the insured may at his option take the insurer at his word. The insured is then relieved of the duty of further performance on his part, and may maintain an action at law for damages, before the specified date of expiration. * * *

"Especially is the rule clear where the insurer not only repudiates the contract by his declaration that he will not pay in future, but also violates a present obligation under the contract, by refusing to accept a premium when due. It would indeed be a harsh doctrine that compelled the insured to struggle on paying premiums all his life or tendering premiums to an unfriendly insurance company, in constant apprehension of a lawsuit in place of an immediate cash payment, as his family's inheritance upon his own decease. The insurer's refusal to perform his promise, however, must be distinct, unequivocal and absolute, and the reliance by the insured upon such renunciation must be equally clear to warrant his action for damages before maturity of the contract. And if, with knowledge of the facts, the insured elects to continue with the contract, he cannot subsequently exercise a second and inconsistent election to treat it as abrogated."

The case of *Roehm* v. *Horst,* 178 U. S. 1, 20 S. Ct. 780, cited in the text, is the leading case on that question, and supports the rule stated. There are many authorities holding in accordance with the rule announced in *Roehm* v. *Horst,* which we deem it unnecessary to cite, since that rule was approved by this court in the case of *Kirchman* v. *Tuffli Bros.,* 92 Ark. 111, 122 S. W. 239, in the following language: "In the case of *Roehm* v. *Horst,* 33 C. C. A. 550, it was ruled that a positive and absolute refusal to carry out the contract prior to the date of actual default amounted to a breach of the contract, and that, after the renunciation of the agreement by the one party, the other party should be at liberty to consider himself absolved from any further performance of it, retaining his right to sue for any damage he has suffered from the breach of it. This case was affirmed by the Supreme Court of the

United States in the case of *Roehm* v. *Horst,* 178 U. S. 1, [20 S. Ct. 780] and, we think, correctly announces the rights of the parties under such circumstances.''

In the instant case there was not a refusal to carry out the contract and a renunciation of the agreement, but, in the course of the correspondence between the parties, when default was first made in the payment, there was simply the contention that, under the existing facts, the insured for the time being was no longer entitled to the monthly benefits. Recognizing that there had been no repudiation of the contract, appellee paid the premium January 25, 1932, and testified that the policy was still in effect, and in his complaint alleged that the contract had been put in force in January, 1922, and had remained in full force and effect thereafter, and was in full force and effect at the time of the filing of the suit. The appellant, in its answer expressly disavowed any repudiation, but affirmed the contract, and merely contended that under its terms the appellee was not entitled to the monthly benefits. This makes this case unlike that of *Ætna Life Ins. Co.* v. *Phifer,* 160 Ark. 98, 254 S. W. 335, relied upon by appellee. In that case the plaintiff was allowed to recover the present value of the future benefit installments because the court found that there had been a total repudiation of the contract in that the insured, by letter, had in express words denied liability on the claim that the policy had lapsed. The court said: ''This letter evinced an intention on the part of the appellant not to be bound by the terms of the contract and was equivalent to a renunciation thereof.'' That case followed the rule in *Roehm* v. *Horst, supra.* Since then there have been a number of cases before the court where recovery was allowed for damages for anticipatory breach, the latest cases being *Liberty Life Ins. Co.* v. *Olive,* 180 Ark. 339, 21 S. W. (2d) 405; *Ætna Life Ins. Co.* v. *Spencer, supra; Travelers' Protective Ass'n* v. *Stephens, supra; National Life & Acc. Ins. Co.* v. *Whitfield,* ante p. 198; *Atlas Life Ins Co. of Tulsa* v. *Bolling, ante* p. 218. In all these cases it appears that damages for anticipatory

870

breach were allowed because of an unqualified renunciation of the contract.

In the Whitfield case, the case of *Ætna Life Ins. Co.* v. *Phifer, supra,* was referred to as authority for the holding there made, and in the Bolling case the contract was repudiated on the allegation that it had been obtained through fraud. We have made diligent search and have been unable to find any case holding contrary to the rule announced in Richards on the Law of Insurance, expressly approved by this court in *Kirchman* v. *Tuffli Bros., supra,* and followed in subsequent cases.

4. Since the judgment must be modified and limited to the amount of the matured monthly benefits at the time of the filing of the suit, it follows that the attorney's fee was improperly allowed by the court as the amount to be recovered will not equal the amount sued for. *Pacific Mutual Life Ins. Co.* v. *Carter,* 92 Ark. 378, 123 S. W. 384. It is therefore unnecessary for us to determine here the contention that § 6155 of Crawford & Moses' Digest regarding attorney's fees to be taxed as costs in certain cases does not apply in suits for damages for anticipatory breach.

The judgment of the trial court will be modified so as to eliminate the attorney's fee, and all sums in excess of the benefits matured at the time of the filing of the suit, with six per cent. interest per annum thereon, and, as modified, will be affirmed without prejudice to the maintenance of further actions by the appellee upon the benefits now matured or such as shall hereafter fall due. It is so ordered.