METROPOLITAN LIFE INSURANCE COMPANY *v.* HARPER.

4-3427

Opinion delivered April 30, 1934.

*Leroy A. Lincoln* and *Streett & Streett*, for appellant.

*Powell, Smead & Knox, Lawrence E. Wilson* and *J. F. Quillin*, for appellee.

MEHAFFY, J.   On June 1, 1923, the appellant, Metropolitan Life Insurance Company, issued and delivered to the International Paper Company of New York, in said State, its group policy No. 1864G, insuring and agreeing to insure the lives of certain employees of the said International Paper Company.   The employees of the Southern Kraft Corporation were eligible for insurance under the group policy.

On December 1, 1928, appellant, Metropolitan Life Insurance Company, executed a certificate, No. 15,881, and delivered same to the International Paper Company to be by it delivered to the appellee, Curtis Harper, this certificate evidencing that the said Curtis Harper was then insured under the group policy above mentioned.

This policy provided, among other things, that, upon receipt at the home office in New York City, of due proof that the insured had become, while insured thereunder, and prior to his 60th birthday, totally and permanently disabled, as a result of injury or disease, so as to be prevented thereby from engaging in any occupation or performing any work for compensation or profit, it would

pay the insured a stipulated sum per month for a certain number of months.

The appellee, Curtis Harper, continued in the employ of the Southern Kraft Corporation at Camden until April 7, 1933, on which date he received an injury as a result of being kicked by a mule, which caused his permanent and total disability.

Suit was brought by the appellee in the Ouachita Circuit Court on July 14, 1933. The appellee alleged the execution and delivery of the certificate to him, and the execution and delivery of the group policy to the International Paper Company, and that appellee was in the employ of the Southern Kraft Corporation at the time of his injury, and that the certificate was in full force and effect. He alleged that he was injured prior to his 60th birthday, by being kicked on his head and other parts of his body by a mule; that, as a result of said injuries, his skull was fractured, and there was a severe injury over his right eye, one over his left eye, injury to his left ear, and severe injury to his back and kidneys, and that he became totally and permanently disabled; that he duly notified the appellant of his injuries and disability, and requested blank forms upon which to make proof; and that the appellant refused to furnish such forms. It was further alleged that he was entitled, under the certificate, to recover 20 monthly payments of $71.45 each, aggregating $1,429, for which sum he prayed judgment. The group policy and the certificate were attached to the complaint as Exhibits A and B, and the total and permanent disability clause was copied in his complaint.

On October 3, 1933, the appellant answered, admitting that it is a corporation chartered under the laws of New York and authorized to do business in Arkansas; denied that the certificate contained the provisions alleged in the complaint; denied that appellee, from the date that the certificate was issued, was continuously in the employ of the International Paper Company until April 7, 1933; denied that on that date the insurance in force was $1,400, or any other sum; denied that appellee was in the employ of the International Paper Company;

denied that appellee was required to drive and feed certain mules; denied that he was kicked on the head and other parts of the body by one of the mules; denied that he was permanently injured. It specifically denied the injuries mentioned in the appellee's complaint; denied that appellant was notified and requested to furnish blank forms on which to make such proof; denied that it refused to furnish forms; denied that it denied liability prior to the filing of the suit; denied that appellee is entitled to recover $71.45 for 20 months or any other sum; denied that it is liable to appellee in any sum. It further denies any repudiation of the contract, but expressly affirms the contract as expressed in the policy sued on.

Appellant then pleads certain paragraphs of the group policy as a defense, and denies that appellee received injuries while he was insured under said group policy. Appellant further states that the contract was made in New York, is not an Arkansas contract, and that appellee cannot recover 12 per cent. penalty or attorney's fees.

Appellee introduced the group policy and the certificate above mentioned, and he testified about his age and about working for the International Paper Company and his injuries.

Physicians were also introduced who testified as to the injuries. The appellant also introduced physicians who testified. Their testimony was in conflict, and it would serve no useful purpose to set it out.

The following stipulation was introduced: "It is stipulated and agreed by and between counsel for plaintiff and defendant that: The first and only notice, claim or proof that plaintiff had become totally and permanently disabled as defined in the policy was by letter of June 20, 1933, written by Lawrence E. Wilson, as attorney for plaintiff, and addressed to the Metropolitan Life Insurance Company, New York City. (Original of said letter hereto attached as part of this stipulation.) That defendant company replied to said letter under date of June 27, 1933, and on same date wrote the assured, International Paper Company, requesting information as to

the status of plaintiff's claim. (Copies of said letters hereto attached as part of this stipulation.) That on July 6, 1933, the defendant again wrote the attorney for plaintiff sending him the forms GH 24-C on which to make claim as requested, and on the same date and on July 11, 19 and 21 it wrote other letters seeking information as to the status of plaintiff's insurance claim. (Copies of said letters hereto attached as part of this stipulation.) That, without further notice or time, this suit was filed on July 14, 1933, and summons issued. That shortly thereafter notice of summons was received by the defendant. That prior to the filing of this action no denial of liability had been made by the defendant.

It is further stipulated and agreed that Master Insurance Policy No. 1864-G, pleaded in the complaint, was made, executed and delivered in the State of New York, between the defendant and the International Paper Company, both New York corporations, and dated June 1, 1923. That the certificate, exhibited with the complaint, was executed and delivered to said International Paper Company in New York for the use and benefit of plaintiff and by said paper company delivered to plaintiff in Camden, Arkansas, on December 1, 1928. That at the time of such delivery to plaintiff he was a citizen and resident of Arkansas, and defendant was authorized to do business in said State.''

Certain correspondence was introduced, which will be referred to hereafter. The case was tried before a jury, and a verdict for appellee was returned for $1,429. The case is here on appeal.

It is first contended by the appellant that the action was prematurely brought. It is contended that the action could not be brought until proof of disability was received by the home office in New York City. The policy provides that the first monthly installment will be paid upon due proof of total and permanent disability. There is nothing in the contract as to the character of proof required. The injury occurred on April 7, 1933, and on June 20 the attorney for appellee wrote a letter to the appellant, stating that appellee was insured under the

group policy, giving the number, and stated to the appellant in this letter that he had made an effort to procure blanks upon which to file claim under the policy, but had failed to receive them; and said further: "This is to advise you that he expects to assert his rights under the total and permanent disability benefits provided for in the said policy. I will appreciate you writing me at your earliest convenience advising me the proper person to communicate with, in the event you have a State representative."

This letter was written on the 20th of June. Thereafter, on June 27, the appellant wrote the attorney that it had received his letter of the 20th, and that it was necessary that it know the present status of claimant's insurance, and that it was writing to the group policyholder for this information.

Although appellant was informed on June 20th that appellee had made an effort to get blanks to make proof, the appellant, seven days thereafter, wrote to him, not sending him blanks to make proof or requesting any proof, but stating to him that they were writing the group policyholder. They introduced a letter which the evidence shows that they did write to the group policyholder.

On July 6th, the evidence shows a letter was written, in which the statement was made that they were attaching two forms, SH 24 C, on which claim was to be made. Three months had elapsed since the accident to appellee, before this letter was written, and the company had been informed on June 20th that the appellee intended to assert his rights under the total and permanent disability benefits provided for in the policy. While the letter states that blanks to make proof of claim were attached, Mr. Wilson testifies that they were never received, and presented papers, and said that that was all that he had ever received from the company.

This evidence was admitted without objection. Of course it was competent for the appellee to prove that he never received the blanks, although it might be admitted that they were mailed. But in their first letter in response to Wilson's letter of the 20th, appellant not only

did not furnish blanks, but it did not ask for any information or proof, but manifested an intention to get its information from the group policyholder. Appellant was then in the attitude of either treating Wilson's communication as proof, or of refusing to send him blanks to make the proof; but in either event he would have a right to bring his suit.

The policy provides that the first installment will be paid upon receipt of due proof of disability. Appellant either accepted Wilson's communication as proof, or declined to furnish him blanks at that time, and did not at that time ask for any additional proof or information. Appellee had a right to treat this as a breach of the contract. If he was entitled to recover at all, liability attached on the 7th of April, and the suit was not brought until July 14th. Immediately on the bringing of the suit, the appellant was again advised of appellee's claim and the facts he relied on.

When one party to a contract breaches it, the other party may immediately bring suit to recover damages for the breach. It is true that appellant, in its answer, expressly disavows any repudiation of the contract, but it is also true that it denies that appellee was continuously in the employ of the International Paper Company until April 7, 1933; it denies that on that date appellee had any insurance in force; and also denies that appellee was in the employ of the paper company on April 7th. It might very well say that it admitted issuing the group policy, and at the same time say that the appellee was never in the employ of the paper company, and never had any policy, and this would be a repudiation of the contract with appellee, notwithstanding it states in its answer that it does not repudiate the contract.

Insurance policies, as we have frequently said, are liberally construed in favor of the insured, and strongly against the insurer. *National Life & Acc. Ins. Co.* v. *Whitfield,* 186 Ark. 198, 53 S. W. (2d) 10.

The next contention of appellant is that the verdict is not supported by the evidence, and is contrary to the law and the evidence. The evidence was in conflict as to

the extent of appellee's injuries, and that question was settled by the jury under proper instructions, given both at the request of the appellee and the appellant.

There was sufficient evidence to submit the question of total and permanent disability to the jury. This court has frequently decided what constitutes total and permanent disability, and we do not deem it necessary to discuss this question here. Among the cases discussing this question are the following: *Missouri State Life Ins. Co.* v. *Snow,* 185 Ark. 335, 47 S. W. (2d) 600; *Mo. State Life Ins. Co.* v. *Johnson,* 186 Ark. 519, 54 S. W. (2d) 407; *Guardian Life Ins. Co.* v. *Johnson,* 186 Ark. 1019, 57 S. W. (2d) 555; *Ætna Life Ins. Co.* v. *Spencer,* 182 Ark. 496, 32 S. W. (2d) 310; *Travelers Prot. Ass'n* v. *Stephens,* 185 Ark. 660, 49 S. W. (2d) 364; *Mutual Life Ins. Co.* v. *Marsh,* 186 Ark. 61, 56 S. W. (2d) 433.

It is next contended that the verdict of the jury is excessive. The policy provided for the payment of 20 monthly installments of $71.45 each. At the time of the suit, there were four installments due. The other installments were due, one every thirty days.

"The breach of the contract, the appellant company's refusal to pay under its terms, and denial of any liability thereunder, gave the insured the right to sue for gross damages for such breach of contract, and the court has held that the measure of such damages is the present cash value of the past and future installments of the weekly indemnity, based on the life expectancy of the insured." *Nat. Life & Acc. Ins. Co.* v. *Whitfield, supra; Ætna Life Ins. Co.* v. *Phifer,* 160 Ark. 98, 254 S. W. 335.

The recovery was for $1,429, the aggregate amount of the monthly installments. It should have been for the present value of the installments. As we have said, four installments were already due, and that left 16 installments that were to become due, one every 30 days. The four installments which were already due, together with the present cash value at the time of the trial of the 16 other installments, aggregate $1,382.92. The verdict should therefore have been for this amount, instead of

$1,429, and it is modified so as to give judgment for $1,382.92.

It necessarily follows that the 12 per cent. damages should be 12 per cent. of $1,382.92, instead of 12 per cent. of $1,429, and the judgment will be modified accordingly.

In this case the policy or certificate was delivered to appellee in Arkansas, and it was not effective until delivered. The statute as to damages and attorney's fees is therefore applicable.

We do not deem it necessary to set out the instructions, but we have carefully examined the same, and have reached the conclusion that the jury was fairly instructed. All questions of fact were settled by the verdict of the jury, and the jury's finding of facts is conclusive here.

The judgment will be modified as above indicated, and, as so modified, affirmed.

SMITH, McHANEY and BUTLER, JJ., dissent.

SMITH, J., (dissenting). The judgment here appealed from should, in my opinion, be reversed.

I give fullest assent to the rule, many times applied by this court, that the verdict of a jury is conclusive of all disputed questions of fact, and, in recognition of the rule, agree that the disability of the insured has been established, although the physician who attended him expressed the opinion that the insured's recovery was complete.

But, while the verdict of the jury concludes the question that the insured is permanently and totally disabled, the testimony of this doctor, substantiated by other testimony in the case, would appear also to be conclusive of the question that it was not a repudiation of the contract to demand proof of the disability, and that the insurer was not required to accept the letter of the insured's attorney as being conclusive of that fact.

The contract gave the insurer the right to make this demand for proof of disability; in fact, the insurer's policy or certificate makes the furnishing of this proof a condition precedent, upon the performance of which suit may be brought. Can it be considered a repudiation of a contract to demand a right which the contract expressly confers?

Now, the verdict of a jury is not necessarily, and in all cases, conclusive of the issues in the case. It is conclusive only of disputed questions of fact. The rule is well settled, and has been many times applied, that, where there are no disputed questions of fact, the case becomes one of law for the decision of the court. See *Catlett* v. *Railway Co.*, 57 Ark. 461, 21 S. W. 1062, and the numerous cases citing and following it. There are certain controlling questions in this case which are either established by the undisputed evidence or are covered by the stipulation of the parties, which, under rules of practice long accepted and always followed, we must assume to be true.

There is first no question about the obligation which the insurer agreed to perform, nor as to the conditions under which performance could be demanded. These are so plain that it is impossible to construct an ambiguity to becloud them or to leave their meaning in doubt.

The master policy reads as follows: "Total and Permanent Disability Benefits. Upon receipt, at the home office in the city of New York, of due proof that any employee, while insured hereunder, * * * has become totally disabled, * * * the company will, in lieu of the payment at death of the insurance on the life of said employee, * * * pay monthly installments as hereinafter described. * * *. Such monthly installment payments shall be made during the continuance of said disability. Provided, however, that in no event shall more than sixty monthly installments be payable hereunder. * * * The first monthly installment will be paid upon receipt of due proof of total and permanent disability, in which event the insurance herein provided for under this policy on the life of said employee shall cease to be in force, and no further premiums will be payable on account thereof. During the period of total and permanent disability, the said employee shall not have the right to receive in one lump sum the commuted value of any unpaid monthly installment, but, if the said employee dies during such period, any installment provided herein remaining unpaid at the date of death shall be commuted at rate of

three and one-half per cent. per annum, compound interest, and paid in one sum to the beneficiary.''

The plain meaning of this language appears to be that, upon receipt of proof of disability, that is, when and after proof has been received at the home office of the insurer in New York City, payments will be made as agreed, upon the conditions stated. These payments are to be made monthly over a period not exceeding sixty months, except in the case only of death, in which case they shall be commuted at the rate of three and one-half per centum per annum, compound interest, and paid in one sum to the beneficiary. It is an undisputed fact that the insured was not dead when this case was tried in the court below.

The certificates which are given to the employees, and one of which was given to appellee, contain nothing to becloud the meaning of these conditions. The group or master policy and the employee's certificate, together, constitute the contract. There being nothing in the latter which conflicts with the former or renders its meaning doubtful, the two instruments must be construed together to arrive at a correct knowledge of the actual contract. *Ætna Life Ins. Co.* v. *Dunkin*, 266 U. S. 389, 45 S. Ct. 129. The certificate given the employee conforms to the group policy, and provides that the benefits shall be payable upon receipt of due proof of loss, in equal monthly installments as shown in a table made part of the insured's certificate, with the proviso that in case of death the present value of any unpaid installments shall be paid in one sum. According to this table, made a part of the certificate here sued on, the number of the installments of payments and the amount of each is made dependent upon the amount of insurance carried, increasing automatically each year the certificate is kept in force. Appellee's certificate has been in force long enough for the twenty installments for which it provides to be increased from $51.04 to $71.45, so that the twenty installments to be paid as they matured and without commutaion would amount to $1,429, and that is the exact amount of the verdict and judgment in this case.

Now, it was held, in the case of *Ætna Life Ins. Co.* v. *Phifer,* 160 Ark. 98, that, in a suit based on the permanent disability clause of a life policy, where the insurer had renounced the obligation and binding effect of the contract, as we held had been done in that case, the insured, if permanently and totally disabled, could treat the contract as breached and sue for the present value of the monthly payments agreed to be paid during disability, based on his life expectancy, to which, under the contract, he would have been entitled but for its repudiation by the insurer. It will be observed that the sum to be sued for and recovered was not the total amount of all the installments, but the present value thereof, and this upon the theory that the insurer had renounced the contract.

Has there been any renunciation of the contract in the instant case? It must be answered, under the undisputed evidence, that there has not been, unless the demand for the proof of disability, which the contract of insurance gives the insurer the right to ask, and upon the making of which the right to sue was conferred, constitutes renunciation.

The answer here filed contains a general denial of the allegations of the complaint, and specifically denied the allegation of disability. It must be remembered that it is not contended that any proof of disability was ever furnished. Lacking this proof, which the insurer had the contractual right to demand, was it not justified in denying disability and liability therefor? The insurer had not been furnished with the evidence thereof to which it was entitled, and it ought not to be expected that it would admit this material fact of which it had been kept in ignorance.

After denying facts of which it had no information, the defendant insurance company answered as follows: "Further answering, defendant expressly disavowing any repudiation but, on the contrary, affirming the contract as it is expressed in the policy sued on by the plaintiff," admits the issuance of both the group policy and the certificate of appellee and their binding effect, but alleges that the conditions are non-existent under which

liability may be asserted thereon. This answer, like all pleadings to be correctly interpreted, must be read as a whole, and, when so read, a fair interpretation of it is that, having no information on the subject, a general denial of its allegations was made, following which it is alleged that the contract was a binding obligation if plaintiff was an employee at the time of his injury and had become totally and permanently disabled. However, it is undisputed and stipulated that there had been no denial of any fact prior to the institution of the suit. Therefore, if this case is to be predicated upon a denial of liability, the cause of action was prematurely brought, and should be abated for that reason. *Atlas Life Ins. Co.* v. *Wells,* 187 Ark. 979, 63 S. W. (2d) 533; *Metropolitan Life Ins. Co.* v. *Gregory,* 188 Ark. 516, 67 S. W. (2d) 602.

I most respectfully, but very earnestly, insist that no one can be justly held to have repudiated or renounced a contract which he insists shall be employed to determine the relative rights of the respective parties.

A written stipulation was prepared and signed by the attorneys for the respective parties, which was offered in evidence, and the authority of the attorneys to enter into this stipulation and to file it is not questioned. It reads, in part, as follows:

"It is stipulated and agreed by and between counsel for plaintiff and defendant that:

"The first and only notice, claim or proof that plaintiff had become totally and permanently disabled as defined in the policy was by letter of June 20, 1933, written by Lawrence E. Wilson, as attorney for plaintiff, and addressed to the Metropolitan Life Insurance Company, New York City. (Original of said letter hereto attached as part of this stipulation.) That defendant company replied to said letter under date of June 27, 1933, and on the same date wrote the assured, International Paper Company, requesting information as to the status of plaintiff's claim. (Copies of said letters hereto attached as part of this stipulation.) That on July 6, 1933, the defendant again wrote the attorney for plaintiff sending him the forms GH 24-C on which to make claim as re-

quested and on the same date and on July 11th, 19th and 21st it wrote other letters seeking information as to the status of plaintiff's insurance claim. (Copies of said letters hereto attached as part of this stipulation.) That without further notice or time, this suit was filed on July 14, 1933, and summons issued.''

The letters referred to are made exhibits to the stipulation, and it will be observed that the first information which the insurer had of the existence of the claim was contained in the letter which was dated—not received but dated—on June 20, 1933. It is not contended, and the contention could not be sustained if made, that the obligation to pay arose or matured upon the receipt of this letter. The contract does not so provide. On June 27 a letter was written to the employer at its New York office asking it to ''be good enough to consult your records and let us know present status of Mr. Harper's life insurance,'' and asking whether he was an employee. On July 6 a letter was written to the insurer's attorney which reads as follows: ''In accordance with your request, we are attaching two forms, GH 24C, on which claim is to be made. When presenting this, please see that all questions are fully answered so as to avoid any delay. We will then, upon receipt of the claim, be glad to review it without prejudice.'' Now, Mr. Wilson admitted receiving this letter, but he denied receiving the blanks to which it referred, although it is recited in the stipulation ''That on July 6, 1933, the defendant again wrote the attorney for plaintiff sending him the forms GH 24-C on which to make claim as requested.'' It is stipulated also that on July 11th, 19th and 21st the insurer wrote other letters to said attorney, seeking information as to the status of the plaintiff's insurance claim. Without answering any of these letters, and without furnishing this information, in fact, before the receipt of the two last-mentioned letters the suit was filed ''without further notice,'' on July 14, 1933, and summons issued. Do these undisputed and stipulated facts support the contention that the insurance contract had been repudiated?

We held, in the case of *Missouri State Life Ins. Co. v. King,* 186 Ark. 983, 57 S. W. (2d) 411, that "the proof of disability furnished by the insured was not conclusive of that fact. The company had the right to make an investigation. Disability is not a fact, like that of death, which either exists or does not exist. It may be, and frequently is, a question about which there is a doubt, and, if the company had the right to investigate this fact, it was, of course, entitled to a reasonable time within which to exercise the right." We there also said that this investigation should be made expeditiously and in good faith, and that the insurer's approval thereof was due when, acting expeditiously and in good faith, it had been afforded a reasonable opportunity to investigate the proofs submitted.

Does not the undisputed testimony and the stipulated facts in the instant case show the greatest expedition and the utmost good faith? The attorney was advised to fill in the blanks carefully, so that delay might be avoided, and it was urged in other letters to submit this proof promptly.

Now, it being undisputed that no proof was ever made, and it being also undisputed, in my opinion, that the insurer was not responsible for this failure, it follows that the suit was prematurely brought.

The case of *Smith* v. *Mutual Life Ins. Co. of New York,* 188 Ark. 1111, is too recent to again review the question. We there said: "We held in the Farrell case, as we have in all other cases decided, that liability attached upon causation of the injury suffered, but that the cause of action on such liability accrues only after the filing of the proof of disability. The making of the proof of loss was not treated or considered as a condition precedent to liability in the Farrell case, but it was treated as a condition precedent to the right of recovery. The rule is, as announced in the Farrell case and in all others on the subject announced by this court, that liability attaches upon causation of total and permanent disability of the insured, but that the right of recovery is postponed until notice to the insurer of the disability or the filing of the proof of disability or the lapse

of time provided for in the policy in reference to the accrual of the right of recovery. *Ætna Life Ins. Co.* v. *Davis,* 187 Ark. 398, 60 S. W. (2d) 912; *W. O. W.* v. *Meek,* 185 Ark. 419, 47 S. W. (2d) 567; *Ætna Life Ins. Co.* v. *Phifer,* 160 Ark. 98, 254 S. W. 335.''

The majority, in the Smith case, also reviewed the case of *Bergholm* v. *Peoria Life Ins. Co.,* 284 U. S. 489, 52 S. Ct. 230, and drew a distinction between it and the case there under review, which the writer and Mr. Justice McHANEY thought did not exist and we therefore dissented.

The opinion of the Supreme Court of the United States in the Bergholm case recites the provisions of the policy there sued on in regard to notice, which read as follows: ''Upon receipt by the company of satisfactory proof that the insured is totally and permanently disabled, as hereinafter defined, the Company will, * * *,'' etc. After quoting this provision the Supreme Court of the United States distinguished it from the provision as to notice appearing in the case of *Minnesota Mutual Life Ins. Co.* v. *Marshall,* 29 Fed. (2d) 977, and proceeded to say: ''Here the obligation of the contract does not rest upon the existence of the disability, but it is the receipt by the company of proof of the disability which is definitely made a condition precedent to an assumption by it of payment of the premiums *becoming due after the receipt of such proof.* The provision to that effect is wholly free from the ambiguity which the court thought existed in the Marshall policy.''

The similarity of the language in regard to notice in the instant case to that quoted from the Bergholm case, *supra,* is such that, if we are to follow the Bergholm case, as we professed to do in the Smith case, *supra,* we should give it the same construction. In the Smith case the majority said: ''The Supreme Court of the United States was eminently correct in holding that the language just quoted must be performed by the insured as a condition precedent to his right of recovery. This is the plain and unmistakable meaning of the language employed.'' If it is, I submit that the instant suit is prematurely brought, and, if so, it should be

abated. It was so expressly held in the case of *Atlas Life Ins. Co. v. Wells,* 187 Ark. 979, 63 S. W. (2d) 533. This Wells case cited the Bergholm case as authority for the holding there made that ''liability attaches when the disability accrues and proof of loss was made.''

Numerous objections of a specific nature were made to the instructions given in this case. Instruction numbered 1 contained the declaration of law under which the judgment was recovered. It reads, in part, as follows: ''And if you further find that plaintiff has furnished due notice of such disability and requested blanks upon which to furnish due proof of such disability, and if you further find that defendant failed or refused to furnish such blanks within a reasonable time after such request, and denied liability for such disability, if any, then you are instructed that the total amount collectible by the insured monthly, for such disability, has matured, and your verdict will be in the sum equal to the total monthly payments under the said certificate, if you find plaintiff is entitled to recover.''

I think this instruction was erroneous for reasons already stated, and for other reason hereinafter stated. It required only notice of the disability, whereas, as has been shown, the insurance contract required proof of disability, the furnishing of which was the condition precedent upon which the suit might be maintained. The instruction apparently dispenses with this requirement if the fact be found that a demand was made for blanks upon which to make the proof, if it was further found that the defendant failed or refused to furnish such blanks within a reasonable time after such request and denied liability for such disability. Specific objections were made to the instruction raising the questions here discussed. The instruction was wrong, if for no other reason, because, as we have pointed out, the undisputed and stipulated facts show there was no failure or refusal to furnish such blanks within a reasonable time after such request, and there had been and was no denial of liability, and certainly, none of any kind prior to filing suit.

It is very earnestly insisted that the judgment is excessive, and I think this contention is well taken. It

was held, in the Phifer case, *supra,* that where there was total and permanent disability, accompanied by a renunciation of the contract, the person who had made due proof might recover the present value of all installments to which he was entitled, and this holding was reaffirmed in the case of *Travelers' Protective Ass'n* v. *Stephens,* 185 Ark. 660, 49 S. W. (2d) 364. The facts in the Stephens case, as found by the verdict of the jury, were .that the insured had sustained an injury which rendered him totally and permanently disabled. The disability was such that it would necessarily continue beyond the time during which benefits would be payable. The insurer contended that the disability had arisen from participation in a fight, and that it had expressly exempted itself from any liability arising ''(2) from fighting or wrestling,'' in other words, that there was no contract covering the insured's disability. This was regarded as a repudiation of the contract and an immediate recovery of all the installment benefits was permitted.

It was recognized in the case of *Mutual Life Ins. Co.* v. *Marsh,* 186 Ark. 861, 56 S. W. (2d) 433, that there was some uncertainty and difference of opinion as to the effect of our cases, and we there attempted to clarify them and to remove this uncertainty. To that end the previous cases were reviewed and cited. It was stated in the Marsh case that the insurer, in its answer, ''expressly disavowed any repudiation but affirmed the contract, and merely contended that, under its terms, the appellee (the insured) was not entitled to the monthly benefits.'' This is what the answer, when fairly construed, does in the instant case.

We held in the Marsh case that a mere denial of liability under the policy was not a repudiation of the policy, and was therefore distinguishable from the cases where recovery of damages had been allowed for an anticipatory breach. These cases were named, and the Stephens case was included in that number, it being classed along with the Phifer case as one in which the contract had been renounced. This interpretation of the Stephens case and the others is emphasized by the state-

ment, there appearing, that: "We have made diligent search and have been unable to find any case holding contrary to the rule announced in Richards on the Law of Insurance, expressly approved by this court in *Kirchman* v. *Tuffli Bros., supra,* and followed in subsequent cases."

This Marsh case was thought to represent the deliberate and unanimous view of the members of the court, as there was no dissent from it, and I assert, most respectfully but very earnestly, that unless its authority is to be impaired, this case should be reversed.

It was said, in the recent case of *Equitable Life Assurance Society* v. *Pool, ante* p. 101, that it was *obiter* to hold in the Marsh case that a denial of liability under the policy was not a renunciation of the contract, for the reason that Marsh had estopped himself to assert that fact, because, after disability had accrued, he had paid a premium which he was not required to pay if he was in fact disabled. That cannot be, as the reasoning in that case and the discussion of the authorities there cited and the distinction made between them leave no room for any reasonable doubt that we were deliberately holding that a mere denial that liability had accrued under a policy was not a renunciation of the policy, especially so where it was alleged, as it is in the answer in this case, that the contract is affirmed as a subsisting obligation, and it is prayed that the rights and obligations of the parties be adjudged in accordance with its provisions. This proposition is so elementary and so just that we would not hesitate to apply it in an ordinary contract, and there is no valid reason why the same rule should not be applied to an insurance contract. I submit it was the rule properly applied in the Marsh case and controlled that decision.

We said nothing in the Marsh case about estoppel, and I do not understand how that doctrine could have been invoked. Certainly it was not applied against the insurer, for we held it was not liable for anticipatory damages because it had answered that it was not liable at all. That is the exact point decided in the Marsh case. The payment of a premium by the insured after he had

become disabled and which he was not required to pay would not have worked an estoppel against him to later assert that he was disabled. It would have been evidence having some probative value that he was not disabled and was admissible in evidence for that reason. The payment of a premium which could not have been required could work no prejudice to the insurer, and, therefore, could not estop the insured. The injection of the question of estoppel into the Marsh case appears as strained as other contentions appear to be which I have discussed.

In my opinion, the judgment should be reversed, and I am authorized to say that Justices McHANEY and BUTLER share the views here expressed.