### Western Union Telegraph Company v. Reed.
(Decided April 24, 1914.)

Appeal from Kenton Circuit Court
(Criminal, Common Law and Equity Division).

1. Pleading—Amendments—Section 134 Civil Code.—Under section 134 of the Civil Code, the trial court may, at any time, in the

furtherance of justice, and on such terms as may be proper, cause or permit a pleading to be amended.

2. Pleading—Failure to Deliver Telegram—Negligence—Pleadings Not Inconsistent.—Where the plaintiff sought to recover damages for the negligence of the defendant in failing to promptly deliver a telegram in time for the plaintiff to attend a funeral, and by an amended pleading it was alleged that the defendant was further negligent in incorrectly giving the plaintiff the date of the funeral, the cause of action was the negligence of the defendant, and the two pleadings were not inconsistent with each other.

3. Judgment—Will Not Be Reversed on Account of Unnecessary Instruction Not Prejudicial.—A judgment will not be reversed merely because the court gave an unnecessary instruction based upon the uncontroverted proof of the defendant, and which clearly did not prejudice the defendant's substantial rights.

RICHARDS & HARRIS, S. D. ROUSE, GEORGE H. FEARONS and A. G. RONALD, for appellant.

B. F. GRAZIANI for appellee.

OPINION OF THE COURT BY JUDGE MILLER—Affirming.

At the times hereinafter mentioned, the appellee China Reed, lived at No. 121 Oakland Avenue, in Covington, Kentucky. Her house was not numbered, but the house upon the adjoining lot bore the number "119."

Mrs. Reed's mother was visiting in Camargo, a small town in Illinois, about three hundred miles from Covington; and she having died there on Saturday, September 12, 1912, the following telegram was sent to Mrs. Reed:

"Camargo, Ills., September 21, 1912.
"Mrs. T. B. Reed, 121 Oakland Avenue, Covington, Ky.
"Grandmother is dead. Come at once. Answer.
"WM. A. WATKINS."

This message was received at the appellant's Covington office at 4:32 o'clock P. M. on the same day, and was turned over to Jackson, a messenger boy, for delivery. He returned in about an hour, reporting that he had been unable to find appellee's residence at 121 Oakland Avenue.. Cosby, appellant's manager at Covington, then consulted the city directory for appellee's address and found it given at No. 59 East Second street; but upon attempting a delivery to appellee at that address, the messenger was informed that appellee had moved, and that her new address was unknown.

Cosby then took from the city directory the name of appellee's husband, T. B. Reed, who, according to the directory, was in the service of the Inter-Southern Life Insurance Company, in the Coppin Building, in Covington, and endeavored to reach him through that company, but was told that Reed was no longer in its service. The message was again given to a messenger, with instructions to make a further attempt to deliver it to Oakland Street address, but this second trip was likewise unsuccessful.

Cosby then mailed appellee a postal card, directed to her at No. 121 Oakland Avenue, reading as follows:

"Please call at 435 Scott street and get a telegram received for you at this office, but which remains undelivered for want of suitable address.

"Time mailed September 21, 1912.

"J. D. Cosby, Manager."

Cosby then wired to the defendant's office at Camargo, stating that the Covington manager had been unable to locate Mrs. Reed. On Sunday morning an answer was received by Cosby instructing him to mail the message to Mrs. Reed, at the "General Delivery," which he did.

Appellee received the postal card notice on Monday morning, the 23rd, and called at appellant's office about 11:25 o'clock A. M., where the message was read to her from a copy. She immediately went to the postoffice, and after securing the original message, she went at once to her daughter's residence in Cincinnati, where she remained until the afternoon preparing to depart for Camargo. When she returned to her home in Covington about supper time, she there found the following letter, which had been left under the door:

"Western Union Telegraph Company, Manager's Office.

"Covington, Ky., September 23, 1912, 3:30 P. M.

"Mrs. T. B. Reed, 121 Oakland Avenue, City.

"Dear Madam:

"Referring to conversation of this morning, I am able to advise you that the funeral of your grandmother will take place tomorrow, Tuesday morning, at 10 o'clock.

"Yours very truly,

"J. D. Cosby."

The deceased was the mother and not the grandmother of Mrs. Reed, the original telegram having been sent by Wm. A. Watkins, a grandson of the deceased. There is no explanation of appellant's ability to deliver the letter, after it had failed to deliver the telegram bearing the same address.

Upon the return of appellee's husband shortly after she had received the foregoing letter, he went to the railroad ticket office for the purpose of ascertaining whether the appellee could get to Camargo by 10 o'clock the next morning. He found, however, that the first train would leave Cincinnati at 2:45 o'clock that night, and would not reach Camargo until 11:22 the next morning, which would be after the funeral, according to the letter written by Cosby. Appellee did not, therefore, undertake the trip; and on September 30, 1912, she filed this action against appellant for negligence in failing to deliver the message in time for her to attend the funeral of her mother; alleging that if the message had been delivered on Saturday the 21st, she could easily have reached Camargo in time to attend the funeral on the morning of Tuesday the 24th.

Appellee having afterwards learned that her mother had not been buried until Tuesday afternoon, she amended her petition, by alleging the further negligence of Cosby, the manager, in falsely telling her, as he did in his letter, that the funeral would take place on Tuesday morning; and that if he had correctly informed her that the funeral would not take place until Tuesday afternoon, she would have been able to attend the funeral and would have done so.

The amendment was offered during the trial, and upon appellant's motion the jury was discharged and the trial postponed.

By way of defense appellant denied all negligence upon the part of its general manager and messengers; it plead contributory negligence upon the part of the sender of the message in not giving an adequate address; and further alleged that in sending the letter of September 23rd to Mrs. Reed, Cosby was not acting as the agent of appellant, but did so voluntarily and in his private capacity.

The plaintiff recovered a verdict and judgment for $500.00, and the defendant apeals.

1. It is insisted that the court erred in permitting the amended petition to be filed.

Section 134 of the Civil Code provides, in part, as follows:

"The court may, at any time, in furtherance of justice, and on such terms as may be proper, cause or permit a pleading or proceeding to be amended, by adding or striking out the name of a party; or, by correcting a mistake in the name of a party, or a mistake in any other respect; or by inserting other allegations material to the case; or, if the amendment do not change substantially the claim or defense, by conforming the pleading or proceeding to the facts proved."

It has been repeatedly decided by this court that the only limitation upon the discretion of the court in allowing amended pleadings to be filed is that they must be in furtherance of justice, and must not change substantially the claim or defense; and with few exceptions, the action of the trial court in permitting or rejecting amendments has been approved. Greer v. City of Covington, 83 Ky., 410; L. & N. R. R. Co. v. Poynter, 113 Ky., 952.

Appellant does not claim that it was surprised or mislead by the pleading; and the trial court having discharged the jury and postponed the trial to a later date, appellant was not taken by surprise, and, so far as we are able to see from the record, was not prejudiced in any material respect.

2. After the amended petition was filed, however, the defendant moved the court to require the plaintiff to elect which cause of action she would prosecute, that alleged in the original petition, or in the amended petition; but the court overruled the motion. It is insisted that this was error.

The motion was made upon the theory that the allegations of the original petition were inconsistent with the allegations of the amended petition, and contrary to subsection 4 of section 113 of the Code, which prohibits the filing of inconsistent pleadings, under penalty of being required to elect between them. The acts of negligence were not pleaded in the alternative, but the alleged act of negligence in Cosby's sending the letter of Monday, September 23rd, and giving the wrong hour of the funeral, was set up as a further act of negligence upon appellant's part and in addition to the original negli-

gence of failing to promptly deliver the original telegram on Saturday, September 21st.

The original petition did not allege the date of the funeral; it merely alleged that the telegram having been sent to appellee on Saturday, September 21st, and not having been delivered to her until Monday, September 23rd, about noon, she was, by reason of this unusual delay in delivering the message on the third day after it was sent, unable to attend the funeral.

The amended petition goes further, and sets up the appellant's additional act of negligence in incorrectly telling appellee that the funeral would be held too early for her to attend it.

We see no inconsistency in these two allegations of negligence. If either was true—and it was for the jury to say—the appellant was liable. The gravamen of the appellee's case being the appellant's negligence which prevented her from attending the funeral, there was only one cause of action stated.

The case is similar in this respect to L. H. & St. L. R. R. Co. v. Beauchamp, 108 Ky., 48, where the plaintiff's original petition asked damages upon the ground that appellant's engine had struck and fatally injured Beauchamp's colt, which had been subsequently killed by appellant's employees. The first amended petition alleged, in the alternative, that the colt had been killed in the manner indicated in the original petition, or it had been killed in a cattle guard, negligently maintained by appellant, and that appellee did not know which fact was true, but that one of them was true. The second amended petition alleged that after the colt had been crippled by appellant's engine, although not fatally, the appellant's agents had wrongfully and unnecessarily killed it; and it was contended that this last allegation was inconsistent with the original and first amended petitions.

In overruling that contention, however, the court said:

"The gist of the action upon which recovery is sought is for the death of plaintiff's colt, which, it is alleged, was occasioned by the negligent and wrongful acts of appellant's agents and employes. The cause which is the basis of the action relied on in the pleadings is the same, the amendments only alleging different acts of negligence which occasioned the injury. The amended

petitions do not constitute a new cause of action, and the court properly allowed them to be filed.''

The trial court properly overruled the motion to require appellee to elect.

3. While Mrs. Reed was in Cincinnati on Monday morning she learned through a relative that her mother was dead; whereupon she immediately returned to her home in Covington, and was writing a letter to her father, at Camargo, at the time the postal card notice above referred to, was delivered to her. In that letter she said she had not received any direct message of her mother's death; and in the course of the letter she used this expression:

''I got a notice that a message was at the office for me, just this minute, but could not be delivered for some reason. I will go right up now and get it, but I don't know it is too late for me to get there in time for the funeral. I feel so bad about it, for I would have come on last week if I had known she was so seriously ill.''

It is contended that this letter shows appellee had no intention of attending her mother's funeral, and that there should have been a peremptory instruction for the defendant. We do not think the letter bears the construction attempted to be put upon it. Appellee's position is, that up to the time she received Cosby's letter late on Monday evening, she thought she would not be able to attend the funeral, since her mother had died on Saturday, and appellee had no notice of that fact until Monday; but that she really could and would have attended the funeral which was not held until Tuesday afternoon, if Cosby's letter had not mislead her. Her letter of Monday, above quoted from, and her actions, are not inconsistent with her contention that she desired to attend the funeral and would have done so, but for appellant's negligence.

If the appellant's negligent act, whichever it was, prevented appellee from attending the funeral, it was liable; and there being evidence tending to sustain appellee's contention that she was so prevented, appellant's liability was a question for the jury.

4. It is insisted, however, that the trial court erroneously instructed the jury, in the first three instructions.

By the first instruction the jury was told to find for the appellee in case it believed from the evidence the defendant failed to exercise ordinary care in delivering

the message, and that by reason of such failure the appellee was prevented from reaching Camargo before the burial of her mother.

The third instruction advised the jury that although appellee, after she received the telegram of September 21st, could have reached Camargo in time to attend the funeral, and would have done so but for Cosby's misleading letter of the 23rd, nevertheless, they should not find for the plaintiff if they believed that Cosby acted personally and on his own account, and not as agent of the appellant in delivering the letter of Monday the 23rd.

That there was abundant evidence to sustain the finding that Cosby was acting in his capacity as managing agent for appellant, we think there can be no doubt. He not only sent the letter of Monday the 23rd as "Manager" for appellant, but he received the information therein contained from appellant's agent at Camargo. Evidently, he was attempting to repair the neglect which had been charged against his office for his failure to promptly deliver the telegram; and in so doing he was performing a service for his company.

Unquestionably, therefore, the court properly instructed upon the theory of the case as presented in the third instruction, and that instruction was substantially correct.

Appellant insists, however, that the first and second instructions should not have been given because, as it claims, the question of appellant's negligence in delivering the telegram on Monday the 23rd, was not in issue under the proof. It is true the uncontradicted proof shows that the message was delivered on Monday in time for appellee to have reached Camargo before the funeral. Not only is this shown by the railroad time tables, but likewise by the testimony of the railroad official, which shows that the train that left Cincinnati at 2:45 A. M. on Tuesday the 24th reached Camargo on time at 11:22 A. M., that day, which would have given plaintiff ample time to attend the funeral that afternoon.

The only issues, therefore, that were controverted by the proof were those relating to Cosby's mistake in sending the letter, and the appellee's purpose in attending the funeral but for the receipt of the Cosby letter.

Strictly speaking, therefore, the first and second instructions should not have been given because they were unnecessary, under the proof. But were they prejudicial to appellant's substantial rights? If they were not so prejudicial, the judgment should not be disturbed. It is error to give instructions which contradict each other; but these instructions were not contradictory. They were based upon two different allegations of fact, and the jury could, under the proof, have consistently found for appellant, though not for the appellee, under both aspects presented by the instructions.

Moreover, the jury could have found for appellant upon the issue presented by the first and second instructions, and for the appellee under the third instruction which presented a different issue of negligence; and this, it is evident, is what the jury did.

There being no testimony even tending to contradict appellant's proof that Mrs. Reed could have reached Camargo in time for the funeral by leaving on the train which left Cincinnati at 2:45 o'clock Monday night, it is perfectly apparent that the first and second instructions were mere surplusage, and were so treated by the jury, who really tried the case upon the third instruction, which bore upon the only controverted issue under the proof.

Furthermore, since the first and second instructions related to an issue which the uncontradicted proof thoroughly established in appellant's favor, it could not have been prejudiced thereby. On the contrary, those instructions were really most favorable to appellant, since they authorized a verdict for it, under the uncontradicted evidence upon that issue. If appellant had asked an instruction directing the jury to find that appellant had delivered the message in time for appellee to reach Camargo in time for the funeral, and predicating a recovery upon Cosby's agency in negligently misinforming appellee of the hour of the funeral, it would have been given. Appellant, however, offered no instruction, whatever.

Upon the whole case, we think the third instruction fairly presented the issue between the parties, and that in giving the first and second instructions appellant's substantial rights were in no way prejudiced.

Judgment affirmed.