## Commonwealth Life Ins. Co. v. Brandon.

(Decided Oct. 6, 1936.)

BATSON & CARY and RICHARD H. HOOD for appellant.
JOHN RYAN for appellee.

OPINION OF THE COURT BY JUDGE RICHARDSON—Affirming.

This is an appeal from a judgment for the payment of "Twenty-five ($25.00) Dollars per month, beginning June 27th, 1933, for each month thereafter, and up to and including July 27th, 1935," with interest thereon, on the 27th day of each month, and the further sum of $239.28, a total of two paid premiums, with interest from the dates named in the judgment.

The cause was submitted to the court without a jury. In his finding of facts the court decided that Henry E. Brandon for "more than sixty (60) days prior to the filing of his proof of disability with the defendant, on January 18th, 1932, was totally and permanently, disabled so that he has been, is, and will be permanently, continuously, and wholly prevented thereby from performing any work for compensation or profit, or from following any gainful occupation"; that the Commonwealth Life Insurance Company under the disability benefit clause of its policy herein, paid Brandon on account of his total and permanent disability $25 per month, beginning July 27, 1932, and had waived the payment of two premiums, and thereafter, on May 10, 1934, and May 10, 1935, Brandon had paid it two premiums of $134.64 each. The court further found that Brandon was totally and permanently disabled during the years 1927, 1928, 1929, 1930, and 1931, and for six months of the year 1932, but had failed to furnish notice and proof of disability until in 1932, and that he recover nothing for the period beginning January 27, 1927, and ending January 27, 1932.

Brandon prayed an appeal from so much of the judgment as denied his recovery for this period, and the insurance company from so much of the judgment as allowed Brandon to recover any sum.

Brandon prosecutes no cross-appeal; therefore, so much of the judgment from which he was granted an appeal will not be further considered.

The insurance company, as a basis of its argument for reversal, insists the court erred in overruling its

motion to continue the case, both before and after Brandon was permitted to file an amended petition; it erred in overruling its motion to require Brandon to submit to a physical examination by Dr. H. B. Sights, at Paducah, Ky., and Dr. W. B. Mason, at Murray, Ky., and "the verdict is flagrantly against the evidence."

After Brandon had announced ready for trial, the insurance company entered a motion for a continuance, supported by the affidavits of its attorney, R. H. Hood, and Dr. W. L. Miller. Its motion was overruled on the condition that Hood's affidavit be read as a deposition of the absent witness, Dr. Louis Weber. It reserved an objection to this ruling. Brandon objected to the reading of the affidavit, because no diligence had been shown to obtain the deposition or presence of Dr. Weber. His objection was overruled; thereupon, he consented that the affidavit might be read as the deposition of Weber. Hood's affidavit for continuance states that Weber was a licensed, practicing physician—the chief medical examiner of the Commonwealth Life Insurance Company —skilled in the diagnosis and treatment of diseases of the human body; that he "has access to all the correspondence between the claimant," (Brandon) and the company, and that in January, 1932, Brandon had presented to the insurance company a claim for disability, supported by the report of a physician, and it believing the same were true, approved his claim and waived the payment of the premium due May 13, 1932, commenced the payment of a monthly income in July of that year, and continued to pay the same through May, 1933, the premium due May 10, 1933, being waived. But in May, 1933, the insurance company received information that Brandon's claim was not bona fide, and Weber went to Murray, Ky., called in person on Brandon and found him plowing in the field, doing heavy, manual labor; that Brandon had then stated to him that he had never stopped work on account of any illness, though occasionally he would have slight attacks of indigestion; that he had done all the usual and ordinary work on the farm; his son had built a barn on the farm and put a steep roof on it and he (Brandon) worked on this roof as a carpenter; that he was magistrate of Hazel district; had never missed a meeting of the fiscal court, or was prevented from going on any road project in the district or doing any duty whatsoever connected with his office. And on that occasion Weber had made a

thorough physical and clinical examination of Brandon. Following this statement, the affidavit contains an elaborate description of Weber's examination of Brandon and of his findings concerning Brandon's claimed ailments.

The record discloses that this action was filed March 30, 1934. Process was executed on that date. The trial occurred on the 14th day of August, the ninth day of the August term, 1935. On the 6th day of August, the second day of the August term, 1935, the insurance company requested the court to enter, and the court entered, an order requiring the personal attendance at the trial of Dr. W. B. Mason on the seventh day of the term. We find no order for the personal attendance, subpœna or other process for Dr. Weber, though the case had been pending for some time before it was called for trial and tried.

To avoid the general rule requiring a party asking the continuance to establish to the satisfaction of the court that he had exercised due diligence to procure an absent witness, the affidavit of Dr. W. L. Miller was filed, wherein he states, "that Dr. Weber is suffering from severe bruises * * * and is not in physical condition to attend court at Murray, Kentucky, on the coming Monday." The record does not disclose the residence of Dr. Weber, other than it may be inferred that he resided in Jefferson county. It is true the affidavit of Hood states that the just and proper effect of Dr. Weber cannot be had unless he orally testified in court.

It is true section 556, Civil Code of Practice, provides that upon the affidavit of a party and the written statement of his attorney that the testimony of a witness is important and the just and proper effect of his testimony cannot in a reasonable degree be obtained without an oral examination in court; the court may, at its discretion, order the personal attendance of the witness. We have often construed this provision to mean that when a continuance is sought because of the absence of a witness whose personal attendance is desired, the granting the request is in the discretion of the court. Louisville & N. R. Co. v. Bishop, 89 S. W. 221, 28 Ky. Law Rep. 321; Holzhauer v. Sheeny, 127 Ky. 28, 104 S. W. 1034, 31 Ky. Law Rep. 1238; Crane v. Hall, 165

Ky. 827, 178 S. W. 1096; Bolar v. Browning, 168 Ky. 273, 181 S. W. 1109.

We have ruled it was not error to refuse a postponement of the trial in order to procure the personal attendance of a witness where the movant had not complied with section 556 as to the necessity of the personal attendance of the witness. Crane v. Hall, supra.

Section 315 of the Civil Code of Practice sets out that which an affidavit filed in support of a motion for a continuance because of the absence of a witness must contain, and also provides that if upon the affidavit the adverse party will consent that, on the trial, the affidavit shall be read as the deposition of the absent witness, "The trial shall not be postponed on account of his absence."

An application for continuance is addressed to the sound discretion of the court, and unless this discretion has been abused, the action of the court will not be disturbed by us.

As we have indicated, this action had been pending in court for more than a year. Dr. W. B. Mason had physically and clinically examined Brandon in 1933. His report of his examination had been in possession of the insurance company since the time it was made. During the pendency of the action, no request to Brandon, or to the court, was made by the insurance company, for the privilege of Dr. Sights or Dr. Mason to examine Brandon until the 6th day of August, the second day of the term at which the trial was had. The motion entered on that day was to require him "to submit himself before Dr. H. B. Sights at Paducah, Kentucky for examination."

The court at that time was sitting at Murray, Calloway county, more than fifty miles from Paducah. His compliance with the request necessitated his traveling to, and returning from, Paducah at his own expense. At first blush, it is patent that the request was unreasonable and the court properly refused to grant it.

On August 12th, during the same term of the court, it entered a motion to require Brandon "to submit himself to Dr. W. B. Mason for medical and clinical examination." After the second amended petition was filed,

this motion was renewed. The court overruled both the original and the renewal motion.

In Belt Electric Line Co. v. Allen, 102 Ky. 551, 44 S. W. 89, 90, 19 Ky. Law Rep. 1656, 80 Am. St. Rep. 374, we first stated and applied the rule that a physical examination may be demanded in case where discovery of the truth will more likely result with, than without, an examination, and ''that the examination should be ordered and had under the direction and control of the court, whenever it fairly appears that the ends of justice require the disclosure or more certain ascertainment of facts which can only be brought to light or fully elucidated by such an examination, and that the examination may be made without danger to the plaintiff's life or health, and without the infliction of serious pain.'' In that case we stated the rule to be that a ''defendant has no absolute right to have an order made to that end, but that a motion therefor is addressed to the sound discretion of the court.'' Belle of Nelson Distilling Co. v. Riggs, 104 Ky. 1, 45 S. W. 99, 20 Ky. Law Rep. 499; Louisville & N. R. Co. v. Simpson, 111 Ky. 754, 64 S. W. 733, 23 Ky. Law Rep. 1044; Louisville & N. R. Co. v. McClain, 66 S. W. 391, 23 Ky. Law Rep. 1878.

Accordingly, it was discretionary with the court whether he would order a personal examination of Brandon, and there was no abuse of discretion.

Brandon had been examined fully by Dr. Keyes at the instance of the insurance company at the time his original claim for disability was presented to it. On the report of Dr. Keyes of his examination of Brandon, the insurance company paid in accordance with the disability provision for eleven months. Dr. Mason in December, 1933, at the direction of the insurance company, made a clinical and physical examination of Brandon, ''using the Barium meal test of the stomach, fluorscopic examination of chest, X-ray examination of the stomach, the iodeikon test of the bladder, a gastric analysis, a radiograph, a urine test and other scientific observations and inquiries.'' Dr. Louis Miller began to treat Brandon in 1926. At that time he made a complete physical examination of him and his diagnosis was that Brandon was suffering from ''peptic ulcer''—''commonly called ulcerated stomach.'' He caused Dr. Houston to make an X-ray examination of Brandon. Brandon continued to

be his patient to the time of the trial and there were no symptoms of improvement. And it was Miller's opinion that he was still totally and permanently disabled. Dr. Houston was a member of the firm of Keyes-Houston Clinic which had conducted a clinic and hospital for twelve years. He made of Brandon a clinical and physical examination, employing the X-ray and Barium meal. He concurred in Dr. Louis Miller's diagnosis that Brandon was afflicted with peptic ulcer. Drs. Louis Miller, Houston, and Mason are distinguished physicians in their section. Their testimony leaves no room for doubt that Brandon has some serious, permanent stomach trouble, rendering him totally and permanently disabled within the meaning of these terms as they are used in the policy.

As we said in the McClain Case, "We are unable to see from the evidence that a further examination made at the trial could have revealed anything that was not shown by the evidence before the jury. * * * We therefore conclude that there was no substantial error in overruling the motion for a personal examination." These three eminent physicians, as we gather, from their testimony, agree that ailments of the stomach may be classified in four general groups: (A) Actual stomach disease. (B) Disease in the digestive tract, but outside the stomach, causing reflex stomach symptoms. (C) Actual disease outside the stomach and outside the rest of the digestive tract, causing reflex stomach symptoms. (D) Neuroses—imagination or hypochondriasis. The commonest of group A is ulcer. Ulcer either of the stomach or the first part of the intestine—the duodenum. Group B is gall bladder disease. The gall bladder, of course, is outside the stomach, but is part of the digestive system. Symptoms of gall bladder are gas on the stomach, nausea, and vomiting. Under ordinary circumstances, neither the gall bladder, itself, nor gallstones can be seen on the X-ray. But a dye or a Barium meal test, when taken by the patient after the lapse of a definite time, not only make a shadow on the X-ray plate, but it is also excreted entirely in the bile. The gall bladder is a reservoir for the bile. A short time after the dye or meal test is injected, it begins to be excreted in the bile, and the gall bladder becomes full of it and can be seen on the X-ray plate. They seem to agree that if the gall bladder is full of stones, no, or little, dye or meal gets into it; or if the neck of the gall bladder is

contracted by disease, no dye or meal gets into the gall bladder and no shadow appears on the plate, but if the dye or Barium meal is seen clearly in the gall bladder, then the gall bladder is healthy; if the gall bladder cannot be seen on the X-ray plate after the dye or meal is swallowed, then the gall bladder is diseased. That which these physicians most heartily agree upon is, that the stomach is situated almost at the cross-roads of the body —midway between the head and the hips, and between the back and the front, and their testimony shows that Brandon's trouble is not neuroses or imagination, and that he is not feigning illness or disability.

In describing his stomach trouble, Brandon testified that it caused pains in his stomach, nervousness and weakness, and if he attempted to work any time, he could not hold out. "He gives out;" "cannot hold out to do anything;" "can't walk or plow." If he attempts work, he becomes "sick at his stomach;" "vomits;" "has hemorrhage of the stomach and bowels;" "he can only work a few minutes at the time." His testimony in this respect is corroborated not only by Drs. Miller, Houston, and Mason, but by a number of lay witnesses.

Dr. Houston testified that Brandon, when narrating to him a description of his stomach trouble, "complained of sour stomach, sick stomach, passage of dark action from the bowels and vomiting." He further testified that his examination of Brandon "revealed he was troubled with hyperacidity; also, the X-ray examination of the stomach and bowels revealed that he had peptic ulcer; that he made a chemical examination of his stomach contents, and complete observation of the Barium meal from the time it passed from the stomach to the large bowel." According to his theory in about 90 per cent. of patients with peptic ulcer, the duodenum is involved.

A full report of Dr. Mason's clinical and physical examination of Brandon was introduced as evidence and it is now before us. It is true he did not diagnose and report Brandon's ailment to be peptic ulcer. His testimony in this respect is:

"I think he [Brandon] had too much hydrochloric acid. I think he had trouble with his appendix. I don't think he is a well man; his blood pressure, breathing and general condition are normal,"

and his appendix, as he diagnosed it, might be caused by reflex stimulus peptic in the stomach, without having pain around his appendix. He was further asked and answered as follows:

"Q. What was the trouble? What is your opinion the trouble was? A. I don't know what the trouble is. My opinion is that he had one of three things the matter with his appendix—that he either had a stone in his appendix—the appendix was narrow where it fastened to the bowel, and something go in it, and the appendix tried to force it out, and rolled it into the bowel, and it could not get back—we find that in fifty per cent. of the cases we operate on.

"Q. You say in your report, 'After the patient had taken the first glass of the meal marked peristalsis was observed with strange contraction of the stomach walls, the patient having great difficulty in retaining the meal at the time.' What caused that? A. I don't know.

"Q. Was that normal? A. No sir.

"Q. That indicated something radically wrong with the stomach, didn't it? A. It was wrong with the behavior of the trouble.

"Q. It was functional trouble? A. Yes sir.

"Q. That degree of acidity you reported is extraordinary? A. Yes sir.

"Q. You have stated at that time Mr. Brandon was not a well man? A. I don't think so, with the history he gave, and with the physical examination made, he was not well.

"Q. With the history he gave, and the examination you made, was he at that time able to do hard manual labor on the farm. A. I don't think so. I think it is quite likely he was not—I don't know anything about his work. I don't believe a man constantly carrying that much hydrochloric acid could do much manual work. I don't think he would be able to work.

"Q. Those conditions would stimulate the condition of peptic ulcer? A. I said it may do it."

In his original and second amended petition Bran-

don designated the disease with which he was afflicted and for which he was making claim under the disability provision of the policy as ''peptic ulcer.'' During the progress of the trial, and seemingly after Dr. Mason had testified, with the leave of the court, Brandon filed another amended petition, wherein he alleged, in substance, that if he did not have a disease known as peptic ulcer, ''then he did have and now has some cognate, kindred or like disease of the alimentary tract, which stimulates the symptoms of peptic ulcer; that he had, and now has, periodically internal hemorrhages, vomiting, including vomiting of blood, and that such disease now, is and has existed continuously since 1926, and is permanent; * * * and will be permanently, continuously, and wholly prevented thereby from performing any work for compensation or profit, and prevented thereby from following any gainful occupation, as set out in his original and amended petition.''

The insurance company objected to the filing of it. Its objection was overruled. Reserving an exception, it filed an answer traversing it. It then moved the court to continue the case on the ground of surprise. In its brief it ''contends that the result of this ruling left it in such a position that it was completely unprepared and unable to meet the new issues raised by the amended petition. This was brought about largely because of the court having already overruled his motion to require the appellee to submit himself for a physical examination on three previous occasions at that term of the court. * * * This amended petition changed the issues materially and on the court refusing to allow time for the appellant to prepare to answer these allegations, appellant had no means or methods in its hands to disprove the allegations therein.''

It is true that this court has repeatedly ruled that where an amended petition is filed on the eve of the trial or during its progress, which materially changes the issues, the adverse party upon motion should be granted a continuance for further preparation.

Section 136, Civil Code of Practice, reads:

''If a party amend a pleading or proceeding, and the court shall be satisfied, by affidavit or otherwise, that the adverse party cannot be ready for trial in consequence thereof, a continuance may be granted

to some day in the same term or to another term of the court.''

Under this Code provision, if the insurance company desired a continuance on ground other than that stated in the affidavit of Hood, the duty was upon it to file an affidavit, setting forth the additional facts constituting the ground for his motion. We have already considered the ruling of the court overruling its motion to continue because of the absence of Weber. It is pertinent to state here that the affidavit setting forth Weber's testimony shows that he made both a clinical and physical examination at the home of Brandon, using the X-ray and Barium meal. The record discloses that he went to Brandon's home on the occasion it is claimed in Hood's affidavit, in an automobile, accompanied by a chauffeur, who corroborates Weber in his statement that Brandon was at work when they arrived. It is a matter of general knowledge there are portable X-ray machines which Weber could have carried with him in the automobile to the home of Brandon, with which to have made the X-ray examination disclosed by him, as set out in the affidavit. There is no showing that he had with him on that occasion either an X-ray machine or a Barium meal, or any equipment with which to clinically examine Brandon. It is also a matter of general knowledge that electricity is indispensable in the operation and use of an X-ray machine and there is no showing that electricity was in use at the home of Brandon. In addition to this, Brandon and his two sons testified they were present on the arrival of Weber at their home and the extent of his examination of Brandon was to test his blood pressure, and that Brandon was not at work and did not work on the occasion that Weber and his chauffeur testified that he was engaged in work while they were present. It is a legitimate presumption that the trial court, when considering the affidavit as Weber's deposition, exercised that general knowledge of the necessity of the use of electricity with the X-ray machine. The court on the trial of the case, after the second amended petition was filed, considered Hood's affidavit as the deposition of Weber. This was all the insurance company was entitled to. Considering the fact that the motion to continue made after the filing of the second amended petition was not supported by an affidavit setting forth any additional ground for a continu-

ance, the court did not abuse its discretion in overruling the motion.

The rule is, the action of a trial court on the filing of a pleading conforming to the proof introduced will be upheld by us, unless something showing an abuse of the discretion appears in the record. Holliday v. Cornett, 196 Ky. 427, 244 S. W. 875; Metropolitan Life Ins. Co. v. Smith, 59 S. W. 24, 22 Ky. Law Rep. 868, 53 L. R. A. 817; Louisville & N. R. Co. v. Adams, 148 Ky. 513, 147 S. W. 384; Illinois Cent. R. Co. v. Frost (Ky.) 124 S. W. 821.

The only limitation under section 134, Civil Code of Practice, upon the court's discretion to allow amendments to pleadings, is, that they must be in furtherance of justice and not change substantially the claim or defense. Schulte v. Louisville & N. R. Co., 128 Ky. 627, 108 S. W. 941, 33 Ky. Law Rep. 31; Western Union Tel. Co. v. Reed, 158 Ky. 552, 165 S. W. 656; Graziani v. Ernst, 169 Ky. 751, 185 S. W. 99.

It is indisputable that the evidence introduced at the time this amendment was offered sustained its allegations, and it stating no new cause of action and being made in good faith, the court properly permitted it to be filed. Deatheridge v. Crumbaugh, 8 Ky. Law Rep. 592.

Our statement of the testimony is convincing, that the argument of the insurance company that "the verdict is contrary to the weight of the evidence," is without merit. The evidence showing Brandon's trivial work on the farm and that he was elected and served as justice of the peace is insufficient to overcome the evidence establishing his total and permanent disability within the meaning of these terms as used in the policy. See Ohio National Life Ins. Co. v. Stagner, 231 Ky. 275, 21 S. W. (2d) 289; National Life & Accident Ins. Co. v. Bradley, 245 Ky. 311, 314, 53 S. W. (2d) 701; Mutual Life Ins. Co. of New York v. Marsh, 186 Ark. 861, 57 S. W. (2d) 433.

In the Bradley Case and the Stagner Case the insured was a farmer and sued on the disability provision. In the Marsh Case the insured was a traveling salesman, became disabled, and later was elected circuit clerk. He sought a recovery on a like provision. A recovery in those cases was sustained on comparable facts to those

in the present one as to the work the insured was physically able to perform.

Entertaining the views herein expressed, it is our conclusion the judgment must be affirmed.