HAROLD OSCAR WOODS, APPELLANT, V. CENTRAL STATES LIFE INSURANCE COMPANY, APPELLEE.

271 N. W. 850

FILED FEBRUARY 26, 1937. No. 29785.

*G. A. Farman, Jr.,* for appellant.

*Julius D. Cronin* and *Peterson & Devoe, contra.*

Heard before GOSS, C. J., ROSE, EBERLY, DAY, PAINE and CARTER, JJ., and CHAPPELL, District Judge.

CARTER, J.

This is an action on a policy of insurance to recover total permanent disability benefits alleged to have accrued thereunder. The insurance company contended that plaintiff was able to perform work and to follow occupations for compensation, gain and profit, and that liability had therefore ceased under the express provisions of the policy. A jury was waived and a trial had to the court. The trial court

found for the defendant and dismissed plaintiff's petition. From the overruling of his motion for a new trial, plaintiff appeals.

The policy provided for the payment of benefits when proof was made that the insured "has become wholly and permanently disabled by bodily injury or disease, so that he is and will be permanently, continuously and wholly prevented thereby from performing any work for compensation or profit or from following any gainful occupation." The cessation clause in the policy provided that, "if it shall appear to the company that the insured is able to perform any work or to follow any occupation whatsoever for compensation, gain or profit, the company's obligations as above set forth shall cease."

In a suit on a policy containing similar clauses to the ones above quoted, the Missouri court of appeals said: "In other words, the insuring clause gives the right to benefits when insured is disabled so as to prevent the doing of certain things. The last clause but negatives his right to benefits when he is not so prevented, but when he is able so to engage and does so engage. They are correlative clauses. Both are to be given the same construction. It would be anomalous that the language employed when found in the insuring clause in one part of the policy should be given one construction and when found in another part of the policy should be given another. In the insuring clause, such language is construed to mean that insured is totally disabled when he cannot perform the material and substantial acts of his occupation and is thereupon entitled to benefits; in the last (so-called conduct) clause, it is to be construed as meaning that plaintiff is not totally disabled when he is able to and does perform the substantial and material acts of his occupation and is not in such event entitled to benefits. There is then no conflict between the two clauses. The latter has no effect to limit or vary the former. It is but declaratory of the former. It was doubtless inserted in the policies to enable the defendant to review the condition of plaintiff and his disabilities from time to time and to dis-

charge itself of liability under the policies when it is found that plaintiff's disabled condition has so far improved that he is again able substantially to carry on his occupation or substantially to engage in others." *Stoner v. New York Life Ins. Co.*, 90 S. W. (2d) (Mo. App.) 784. It is clear, therefore, that the addition of the cessation clause in no way changes the liability created in the first-quoted section of the policy.

The plaintiff in the case at bar was a registered pharmacist at the time he became disabled by an attack of infantile paralysis. It is not disputed that he is completely paralyzed below the waist and that his left arm is somewhat impaired. Neither is it disputed that his physical condition has not improved since he was afflicted with this disease and that his means of locomotion is limited to the use of a wheel chair. Total disability benefits were paid by the insurance company until April, 1932, after which further payments were discontinued. The only reason advanced by the insurance company for not continuing to pay the total disability benefits provided by the policy is that the insured was elected county treasurer of Brown county in 1930 and reelected in 1934, and that this is conclusive proof that insured is able to perform work or follow an occupation for compensation, gain or profit as provided in the policy.

The rule applicable is well stated in *Missouri State Life Ins. Co. v. Case*, 189 Ark. 223, 71 S. W. (2d) 199, as follows: "In construing provisions in policies relating to total and permanent disability sufficient to prevent the insured from engaging in any gainful occupation, the rule has been often stated to the effect that we do not give to these provisions a strict and literal interpretation, on the theory that a fair intention of the parties to the contract of insurance is that the insured shall receive indemnity when he is disabled to the extent that he is unable to carry on any business which, without the disability, he would be able to do or capable of engaging in. Therefore, to come within the meaning of the contract of indemnity, it is not required

that the insured shall be absolutely helpless, but he is totally disabled when the infirmity from which he suffers renders him unable to perform all the substantial and material acts of his business, or the execution of those acts in the usual and customary way." See, also, *Aetna Life Ins. Co. v. Person,* 188 Ark. 864, 67 S. W. (2d) 1007; *National Life & Accident Ins. Co. v. O'Brien's Exrx.,* 155 Ky. 498, 159 S. W. 1134; *Atlantic Life Ins. Co. v. Worley,* 161 Va. 951, 172 S. E. 168; *Metropolitan Life Ins. Co. v. Blue,* 222 Ala. 665, 133 So. 707; *Cooper v. Metropolitan Life Ins. Co.,* 317 Pa. St. 405, 177 Atl. 43; *Foglesong v. Modern Brotherhood of America,* 121 Mo. App. 548, 97 S. W. 240; *Nickolopulos v. Equitable Life Assurance Society,* 113 N. J. Law, 450, 174 Atl. 759; *Hamblin v. Equitable Life Assurance Society,* 124 Neb. 841, 248 N. W. 397; *Oswald v. Equitable Life Assurance Society,* 128 Neb. 173, 258 N. W. 41.

We conclude that a policy of insurance providing for the payment of benefits when the insured has become wholly and permanently disabled by bodily injury or disease, so that he is and will be permanently, continuously and wholly prevented thereby from performing any work for compensation or profit or from following any gainful occupation, does not mean, as its literal construction would require, a state of complete helplessness; but the total disability contemplated means inability to do all the substantial and material acts necessary to the prosecution of the insured's business or occupation in his customary and usual manner. Under this construction of the policy, plaintiff is totally and permanently disabled and entitled to recover the benefits provided for in the policy.

The defendant contends that plaintiff, in holding the office of county treasurer, is actually engaged in an occupation for compensation, gain or profit within the meaning of the provisions of the policy and that there is, therefore, no existing liability for the payment of indemnity.

In *Mutual Life Ins. Co. v. Marsh,* 186 Ark. 861, 56 S. W. (2d) 433, it is disclosed that Marsh was a traveling salesman for a drug company. He was injured in an accident

and was left partially paralyzed. He was totally and permanently disabled in the ordinary sense, but payment was resisted for the reason that he was no longer disabled within the meaning of the policy and was able to work and engage in a gainful occupation for the reason that he had been elected circuit clerk. The court, in ruling against the insurance company, said:

"We do not agree, however, with the theory held by the appellant, for, if we adopt it, no case of total disability can arise except where not only the body is disabled, but the mind wrecked as well. No matter how seriously the body may be affected, there are those who, because of some peculiar ability or because of some happy chance, are still able, despite their handicap, to escape from beggary and to earn a living. Cases are not infrequent where men have been stricken totally blind and yet have earned substantial incomes; some, with their bodies totally disabled, have been able to conduct a successful business from the bed in which they are continuously confined; others, because of fortuitous circumstances, have been placed in a position where they were removed above want. These cases all arise, however, because of the possession of some extraordinary capacity or of some fortunate circumstance. Certainly, no cases of this character were in the minds of the insured or the insurer when the contract was entered into, but only the ordinary and usual events that would affect the ordinary person.

"In construing contracts such as the one now before us, it has always been insisted by the insurer that a strict and literal interpretation is required, and a few courts have adopted this view. The great majority, however, decline to do so, on the theory that a fair intention of the parties is that the insured should receive indemnity when he is so injured as would prevent him from carrying on any business which, without the injury, he is able to do or capable of engaging in. * * *

"If the appellee had been circuit clerk at the time he was disabled, the fact that he could go to his office and sit

around and sign his name would certainly not have precluded him from obtaining the benefits for which he had contracted and paid. We can see no difference in his having obtained this office after the disability than in the state of case supposed, and we do not think that an office such as that of circuit clerk was in the mind of the parties at the time of the contract, or under the facts in this case, that it comes within the term 'gainful occupation.' It has no degree of permanence, and in this particular case appears to be, so far as the appellee is concerned, a sinecure bestowed upon him perhaps because of his infirmities by an indulgent people. In any view of the case, since the appellee is not able to perform all of the substantial duties of the office in the usual and customary way, he is totally disabled within the rule announced in the case of *Aetna Life Ins. Co. v. Spencer,* 182 Ark. 496, and as the facts are not in dispute, the court properly directed a verdict for the plaintiff."

In *Dukes v. Jefferson Standard Life Ins. Co.,* 172 S. Car. 502, 174 S. E. 463, the insured was a farmer and became totally disabled due to a stroke of apoplexy. The insured was subsequently elected to the office of sheriff and the company refused to make further payments of benefits for the reason that insured had recovered from such disability. In deciding against the insurance company, the court said:

"Even if it could successfully be contended that the holding of the sheriff's office constituted the plaintiff's occupation, as it seems, is contended by the appellant, with which contention we are unable to agree, it would not avail the appellant anything in this appeal. The proof clearly shows that the plaintiff, since suffering from a stroke of apoplexy, has not been able to attend to the duties of the sheriff's office, but has had to depend upon his deputies, and such assistance as his wife and daughters have been able to furnish him. He has not made anything from the office of sheriff worthwhile, nearly all he made had to be spent in running the office. It is true, he has a lot charged up against parties for fees he is entitled to for handling executions, but cannot collect it. At least, that is the effect of

his testimony. The proof clearly shows that the plaintiff is not in a condition to attend to the work of the sheriff's office. In this connection, as we understand appellant's position, appellant contends that the very fact that plaintiff offered for reelection, was elected and took the oath of the sheriff's office, and undertook to perform the duties connected therewith, after having the stroke of apoplexy, causing his alleged disability, under the provisions of the policy the court should hold as a matter of law that the plaintiff is no longer disabled, within the meaning of the policy. We are unable to agree with this position." Another pertinent statement from the case last quoted from follows: "We wish to state, further, that the court is not concerned with the action of the people of the county of Orangeburg in electing a man sheriff of that county who was not physically able to discharge the duties of that office. His reelection was evidently due to his popularity and the very high esteem in which he was held by the people of that county."

We necessarily conclude that the election of the plaintiff as county treasurer raises no presumption that he has recovered or that he is able to pursue the ordinary duties of his vocation or profession. His election as county treasurer, and his subsequent holding of that office, is not, under the authorities cited and our construction of the insurance contract, an occupation within the purview of the policy.

The trial court therefore erred in not entering a judgment for the plaintiff.

REVERSED.