## METROPOLITAN LIFE INS. CO. v. PITCHER.

## PITCHER v. METROPOLITAN LIFE INS. CO.

No. 9227.

Circuit Court of Appeals, Fifth Circuit.

Dec. 29, 1939.

Rehearing Denied Jan. 29, 1940.

Louis B. Claverie, of New Orleans, La., for appellant Metropolitan Life Ins. Co.

R. Emmett Kerrigan, of New Orleans, La., for appellee William Pitcher.

Before SIBLEY, HUTCHESON and McCORD, Circuit Judges.

HUTCHESON, Circuit Judge.

The suit was for disability benefits provided for in contracts supplementary to two life policies and for statutory penalties and attorney's fees. The claim was that within the contract terms, plaintiff, a school teacher, had become "totally and permanently disabled * * * so as to be prevented thereby, from engaging in any occupation and performing any work for compensation or profit," and that defendant had without just or reasonable cause within the statute withheld the monthly payments due.

The defense was that plaintiff is, and for the period in suit has been, employed as a parish superintendent of public education at a salary of $3,000 per year, and (1) that he is not therefore, disabled within the contract provisions, and (2) if he is, he may not recover, for by the express terms of the policy it is provided, "notwithstanding that proof of disability may have been accepted by the company as satisfactory * * * if the insured shall become able to perform any work, or engage in any business or occupation whatsoever for compensation or profit, the monthly income provided for shall immediately cease; as of the end of the last completed month of total disability, and all premiums thereafter, following, shall be payable."

When plaintiff rested, defendant rested too, and, both parties moving for a verdict, there was an instructed verdict and judgment for plaintiff for the monthly benefits he sued for but without penalties or attorney's fees. Defendant is here insisting that on the undisputed evidence, the verdict and judgment should have gone for it.

The case plaintiff's evidence made, was this. In 1925, plaintiff was graduated from Louisiana State University with a degree of Bachelor of Arts. In the following year, he became a teacher of history, and football and baseball coach, at Riverside Academy, a preparatory or high school in Gainesville, Georgia, and continued in that position until September, 1935. For his services he received a salary at first of $140 and later of $166 per month, and a commission on new students secured by him, running in one year as high as $1,200. In 1929 and 1930, while he was so employed, he took out the contracts in suit. In September, 1935, a disease of the eye, known as conical cornea, with which he had been seriously afflicted, advanced to such an impairing stage, that believing himself unable to any longer perform his duties of teaching history and coaching athletics, he resigned his position, and filed claims under his contracts for disability benefits. These claims were recognized by the company, and disability benefits on one policy, from September 14, 1935 and on the other, from January 14, 1936, were paid him until through April 14, 1937. In January of 1937, by an election of the ten members of the Parish School Board, Pitcher was made Superintendent of Education of the Parish of St. Tammany, his employment to begin on July 1, 1937, and to continue for four years. On the date fixed, he entered upon the performance of his duties and continued to perform them at a salary for the first year of $3,000, and thereafter, of $3,300. In March, 1937, he advised defendant company of his intention to start work and after the April payment, the company paid him no further disability benefits, and demanded and received all premiums falling due thereafter. These are the material provisions of the contracts in suit. First, the provision for payment of monthly disability benefits. "The company agrees upon receipt * * * of due proof that * * * insured has

* * * become totally and permanently disabled as the result of bodily injury or disease * * * so as to be prevented thereby, from engaging in any occupation and performing any work for compensation or profit, and that such disability has already continued uninterruptedly for a period of three months, it will, during the continuance of such disability, (1) waive the payment of each premium; (2) pay to the insured a monthly income." Second, the provision for cessation of such payments, "notwithstanding that proof of disability may have been accepted by the company as satisfactory * * * if the insured shall be [1] able, to perform any work or engage in any business whatsoever for compensation or profit, the monthly income herein provided shall immediately cease and all premiums thereafter falling due, shall be payable."

Upon the trial while plaintiff and his witnesses testified that he required assistance in performing his work, it was admitted that, with the assistance provided for him, he performed his work satisfactorily and efficiently, and without injury to his health, and plaintiff and all of his witnesses testified that he in no manner, slighted or failed in the performance of the duties assigned to him. Dr. Buffington, a specialist in diseases of the eye, testified that the malady affecting plaintiff's eyes was a serious one, that its effect, was permanently disabling, and that if he used his eyes for reading for any length of time, the affliction would have a tendency to increase in severity; that the only way for him to do, is to do very little reading with, and not to use his eyes for excessive work. He further testified, that plaintiff's vision was far from being blind, and that without any other complication, plaintiff could see about as well as anybody else can in life, with better vision; that the question was the use of the eyes so as to make them materially worse; that walking about would not be a strain on his eyes, that the strain would come from near use, primarily reading, bookkeeping or writing, and from violent physical exercise, such as tennis, and hand ball playing.

Upon these facts, plaintiff prevailed below on the contention that under Louisiana law, as settled by its decisions,[2] the risk

---

[1] In the second contract, instead of "be" the word "become" is used.

[2] Crowe v. Equitable Life Assurance Society, 179 La. 444, 154 So. 52; White v. Metropolitan Life Ins. Co., La.App., 166 So. 655; Boughton v. Mutual Life

the contract insured against, was not total and permanent disability to get and hold a gainful employment, but permanent and total inability to continue to perform the particular duties he was engaged in when the policies were written; that under the undisputed proof his defective eye sight prevented him from performing these duties; and the fact that he was able to obtain and was engaged in, other equally gainful employment, is wholly immaterial.

■ Appellant points to the undisputed fact that appellee was able to get and hold, a teaching position, that of Superintendent of Public Instruction, which paid him as much as, or more than, the teaching position he held when the policies were written, and to the provisions in the policies, providing for a cessation of disability payments, "if the insured shall be. able to engage in any business whatsoever for compensation or profit." It insists: that the case was wrongly decided below; that the authorities relied on by appellee will not support the judgment, for they dealt neither with contracts having terms, nor with facts, like those in suit.

We agree with appellant. The Louisiana cases neither lay down nor purport to lay down a rule peculiar to Louisiana. Quoting largely from authorities of general application, Couch on Insurance, R.C.L., and others, they and the authorities from other states appellee cites, purport to base, they do base on, principles of construction, obtaining generally throughout the states. In United States v. Martin, 5 Cir., 54 F.2d 554, 555, Cf. United States v. Crume, 5 Cir., 54 F.2d 556, we had occasion to review the general considerations governing suits on public and private disability contracts. We there said, "both are construed to reasonably and fully give effect to the purpose of the insurance to provide support to the extent of the policy payments, for those who are prevented by the disability insured against, from earning it for themselves;" and, citing many cases, "these decisions all give to the terms the practical common-sense meaning that one is totally disabled when he is not, without injury to his health, able to make his living by working; they' reject the idea that it is necessary to prove absolute inability to do any kind of work; they establish that proof that the insured has been able to do some work, while evidence on the point is not of itself disproof of disability." In each of these cases, judgments on verdicts finding plaintiff totally and permanently disabled, were reversed because of proof, certainly no more convincing than the proof here, that plaintiffs were able to make and had made a living by working.

■ None of the cases cited [3] to the effect, that holding an elective office for pay will not operate to prevent recovery of monthly disability benefits, are from Louisiana. In all of them, the insured was a paralytic or other helpless cripple. In all of them as the court said in the Marsh case, the job held was "a sinecure bestowed upon [the incumbent] * * * because of his infirmities by an indulgent people." In none of them was the insured engaged in following with complete efficiency the same occupation that he was engaged in when he obtained the policies. Here the insured was following the teaching profession when the policies were written; he is following that profession now. Then, his work was in connection with a private school, now it is in connection with public schools. Then he was selected on his abilities by the head of the School; now he is selected on his abilities by the School Board. No one testifies that plaintiff is not fully qualified to act as Superintendent of Schools; no one testifies, nor indeed could testify, that his place is or can be a sinecure.

A holding under this evidence and these policies in suit, that the plaintiff is entitled, notwithstanding his gainful employment as Superintendent of Schools, to receive monthly disability benefits, during its continuance, finds support, we think, in neither reason nor authority. For the error in

Ins. Co., of N. Y., 183 La. 908, 165 So. 140; Manuel v. Metropolitan Life Ins. Co., La.App., 139 So. 548; Madison v. Prudential Life Ins. Co., of America, 190 La. 103, 181 So. 871; Phillips v. Mutual Life Ins. Co., La.App., 155 So. 487, and Cates v. Jefferson Standard Life Ins. Co., La.App., 159 So. 168.

[3] Mutual Life Ins. Co. of New York v. Marsh, 186 Ark. 861, 56 S.W.2d 433, 436; Dukes v. Jefferson Standard Life Ins. Co., 172 S.C. 502, 174 S.E. 463; Commonwealth Life Ins. Co. v. Brandon, 265 Ky. 434, 97 S.W.2d 2; Woods v. Central States Life Ins. Co., of St. Louis, 132 Neb. 261, 271 N.W. 850; Columbian Mutual Life Ins. Co. v. Craft, Miss., 185 So. 225.

instructing a verdict for plaintiff, the judgment is reversed and the cause is remanded for further and not inconsistent proceedings.

Reversed and remanded.